J-S37016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: A.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: D.D., FATHER, | |
| Appellant | No. 3574 EDA 2014 |

Appeal from the Order Entered October 27, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002411-2014

BEFORE:  GANTMAN, P.J., SHOGAN, and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 07, 2015**

D.D. ("Father") appeals from the trial court's October 27, 2014 order finding A.D. ("Child"), born in June of 2012, a dependent child under section 6302(1) of the Juvenile Act, 42 Pa.C.S. §§ 6301–6365.  That order granted the dependency petition filed by the Philadelphia County Department of Human Services ("DHS") and ordered Child to remain in the legal custody of DHS, in her foster care placement.[1]  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows:

---

[1]  S.C., Child's mother ("Mother"), has not filed an appeal from the dependency order, nor is she a party to this appeal.  When discussing Father's arguments herein, at times we refer to Mother and Father collectively as "Parents" due to Father's characterization of the evidence allegedly presented.

The family first became known to DHS on January 29, 2014, when DHS received a General Protective Services ("GPS") report stating that Child's sibling was truant and that there was little food in the home. ("DHS Dependency Petition"). On September 28, 2014, DHS received another GPS report, which alleged that the home Child was living in with Father and Mother was in foreclosure and that there was no gas or electric service in the home.[2] ("DHS Dependency Petition"). The report also alleged that electricity has been previously shut off and that Mother had reconnected it illegally, and Father and Mother may be squatting in the home. ("DHS Dependency Petition"). On September 29, 2014, a DHS Social Worker visited the home and found that there was no electricity. (N.T. 10/27/14, pgs. 34, 35), ("DHS Dependency Petition"). Mother testified that the electricity was turned off sometime in August and remained off throughout October. (N.T. 10/27/14, pg. 83). A Safety Plan was implemented for Child to reside with D.P., ("Grandmother"), since there was no electricity at Child's current residence. (N.T. 10/27/14, pg. 34). On October 14, 2014, DHS learned that Grandmother, in violation of the Safety Plan, returned Child to Father and Mother on October 10, 2014. (N.T. 10/27/14, pgs. 38-39), ("DHS Dependency Petition"). On October 14, 2014, DHS filed and obtained an Order of Protective Custody ("OPC") and placed Child in foster care. On October 16, 2014, a shelter care hearing was held, the OPC was lifted, and the temporary commitment to DHS was ordered to stand. At the shelter care hearing, Father brought a vial containing an unknown liquid and insisted on having that liquid tested. Father was ordered to go to the Clinical Evaluation Unit ("CEU") for a drug screen and assessment, which he did not comply with. (N.T. 10/27/14, pgs. 21, 40). On October 27, 2014,[3] the adjudication and disposition hearings were held[,] and the trial court found clear and convincing evidence to adjudicate Child dependent based on [Father's] present inability [to care for Child]. (N.T. 10/27/14,

_____

[2] While the trial court did not reference the testimony in its procedural history, Norelia Torres, the Turning Points for Children case manager, testified that the September 28, 2014 GPS report also alleged drug use by Mother. N.T., 10/27/14, at 35.

[3] In the interim, on October 20, 2014, DHS filed a dependency petition, seeking to have the court adjudicate Child dependent.

pg. 103). At the adjudication and disposition hearings, Father was referred to ARC for appropriate services, re-referred to the CEU for a drug screen and dual diagnosis assessment, and monitoring to include alcohol. (N.T. 10/27/14, pgs. 13, 103).

Trial Court Opinion, 2/6/15, at 1–2. On October 27, 2014, the trial court entered its order finding Child dependent under 42 Pa.C.S. § 6302(1), granted the dependency petition filed by DHS, and ordered Child to remain in the legal custody of DHS at her foster care placement.

On November 26, 2014, Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following single issue for our review:

A. Whether the trial court erred in adjudicating Child dependent based on paragraph (1) of the definition of a "Dependent Child" under 42 Pa.C.S.A. §6302, in finding that Child lacked proper parental care and control and that Father did not have the present ability or appropriate housing to provide for Child?

Father's Brief at 5.

The Pennsylvania Supreme Court recently set forth our standard of review in a dependency case as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law . . . . We review for abuse of discretion[.]

*In Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

Father contends that DHS failed to meet its burden of proof, by clear and convincing evidence, demonstrating that Child was a dependent child. Father's Brief at 8. Father asserts that the only issue identified and supported by the evidence at the hearing was that the family had a problem with inadequate housing. *Id*. He avers that he and Mother testified that they were transitioning from one house to a new house, and they were able to stay in a hotel during the renovation of their new house. *Id*. at 10. Father also claims that there was no clear necessity for removal of Child from Parents' custody. *Id*. In making these arguments, Father suggests that there was no issue concerning Child being at an imminent risk of harm, or that Parents did not properly care for her. *Id*. For these reasons, Father urges this Court to reverse the trial court's finding of dependency.

Section 6302 of the Juvenile Act defines a "dependent child," *inter alia*, as:

> **"Dependent Child."** A child who:
>
> 1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

With regard to a dependent child, this Court has explained:

> [A] court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the

- 4 -

statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re D.A.*, 801 A.2d 614, 617 (Pa. Super. 2002) (*en banc*). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013); *In re J.C.*, 5 A.3d at 288.

"The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *In re G., T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (internal quotation marks and citations omitted). *See also In re J.C.*, 5 A.3d at 289 (citations omitted). Moreover, the burden of proof "is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G., T.*, 845 A.2d at 872.

This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re A.B.*, 63 A.3d at 349 (quoting *In re C.R.S.*, 696 A.2d 840, 845 (Pa. Super. 1997)).

We have also described the considerations regarding when a child should be removed from parental custody, as follows:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this court had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.
>
> ***In re K.B.***, 276 Pa.Super. 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, this Court has stated: "It is not for this Court, but for the trial court as fact finder, to determine whether a child's removal from her family was clearly necessary." ***In re S.S.***, 438 Pa.Super. 62, 651 A.2d 174, 177 (1994).

***In re A.B.***, 63 A.3d at 349–350.

Further, this Court has described an abuse of discretion not merely as an error of judgment; rather, if "in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007).

We address Father's argument that the trial court abused its discretion in concluding that DHS sustained its burden of proof for finding Child dependent under section 6302(1) of the Juvenile Act. The trial court stated its reasoning as follows:

In the instant case, it was established from testimony that Child is without proper parental care for her physical, mental, and emotional health and such care would not be immediately available. Father was aware that the electricity had been turned off for at least two and a half months[,] and he failed to take the necessary steps to correct it. Father violated the Safety Plan by allowing Child to return home even though he had agreed that Child would remain with Grandmother because there was no electricity in the home. (N.T. 10/27/14, pg. 34). Father testified that sometime in August he found out that the house was in foreclosure and at that time, the electricity was shut off. (N.T. 10/27/14, pg. 64). Father testified that he attempted to contact the electric company to get the power turned on but the electric company refused because of unpaid electric bills. (N.T. 10/27/14, pg. 64). Father testified that he went to a check cashing place to put a deposit towards the electric bill but was unsuccessful. (N.T. 10/27/14, pg. 65). Father testified that the lease that Mother signed with the landlord in January of 2014 indicates that it is the tenant's responsibility to pay for all utilities. (N.T. 10/27/14, pgs. 67–68). The DHS social worker testified that when she visited the home for a second time, there was a generator on the porch but it was not connected and it was not providing electricity for the house. (N.T. 10/27/14, pg. 48). The DHS social worker also testified that Father was ordered to the CEU for a dual diagnosis assessment but failed to go, even though he had many opportunities to go[,] (N.T. 10/27/14, pgs. 92–93), and even though Father stated at the shelter care hearing that he wanted the vial he brought, which was filled with an unknown liquid, to be screened for drugs. (N.T. 10/27/14, pgs. 21, 39, 40). The DHS social worker recommends placement because of the lack of appropriate housing, concerns about Father using drugs or alcohol, and concerns about an untreated mental health issue because of Father's erratic behavior in the courtroom. (N.T. 10/27/14, pgs. 43, 44, 49, 92). Father brought a vial with liquid in it wanting to be tested for drugs. The vial had his name on it and it was labeled oxycodone. (N.T. 10/27/14, pg. 95). The DHS social worker also testified that during her interactions with Father, she smelled a strong odor of alcohol on his person on three occasions. (N.T. 10/27/14, pgs. 58, 60). Father testified that he has an active drug[-]related matter in criminal court and an [sic] active weapon charges. (N.T. 10/27/14, pg. 63). Father and Mother rented a home since the OPC was issued but have not moved in yet. (N.T. 10/27/14, pg. 21). The DHS social

worker visited this new home and observed that the home was not appropriate for Child. (N.T. 10/27/14, pg. 21). The DHS social worker testified that the home was still under construction, there were no kitchen appliances, there was no furniture in the home, and the lease she was shown was only signed by the landlord. (N.T. 10/27/14, pgs. 21, 26). Furthermore upon questioning by the trial judge, Mother could not explain why her last name in the lease was posted with white out[,] and the paragraph relating to security deposit indicated payments being made for the period of February 1, 2003, to January 1, 2004. (N.T. 10/27/14, pgs. 101-103). The DHS social worker testified that the home's current condition is not suitable or appropriate for reunification. (N.T. 10/27/14, pg. 27). The trial court found the DHS and agency social workers credible.

The trial court used its discretion[,] recognized under the law[,] to adjudicate Child dependent to protect her from any future harm because the trial court found that it is against the health, safety, and welfare of Child to remain with Father. The testimony and evidence presented established that Father is unable to provide proper parental care and control of Child and that Father is not presently ready, willing, and able to provide appropriate care for Child. Father could not immediately provide proper care geared to maintain the child safe, at a minimum, likely to prevent serious injury. The trial court found that continuation in the home would not be in Child's best interests and reasonable efforts to prevent placement were made.

Trial Court Opinion, 2/6/15, at 3–4.

Father posits that the trial court made improper credibility and weight determinations and arrived at improper inferences from the evidence at the adjudicatory hearing to conclude that Child was dependent because she lacked proper parental care and control. Father suggests in his brief that Parents' testimony at the hearing supported a finding that within one week after the hearing, Parents could have moved with Child into a home they were having renovated, and they could have lived in a hotel until the

- 8 -

renovations were completed.  Father's Brief at 10.  The trial court found that **Parents' testimony was not credible**, and the testimony of the DHS and agency social workers was credible.  Accordingly, the trial court did not give Parents' testimony any weight.  Trial Court Opinion, 2/6/15, at 4.

Following our careful review of the record, we conclude that the trial court's credibility and weight determinations are supported by competent evidence in the record.  Although the trial court referred to Father's lack of proper care and control of Child throughout its opinion, the trial court included in its discussion a finding that Mother also failed to provide proper parental care and control for Child.  Trial Court Opinion, 2/6/15, at 3–4.  Moreover, the trial court considered Parents' testimony that they were moving to a new home and could temporarily stay in a hotel but rejected that testimony as not credible.  *Id*. at 4.  Thus, the trial court, in its analysis of section 6302(1), properly considered whether Child was able to receive proper parental care and control from both parents.  N.T., 10/27/14, at 109.  *See In re J.C.*, 5 A.3d at 289 (stating that the dependency of a child is not determined "as to" a particular person, but rather must be based upon two findings by the trial court:  whether the child is currently lacking proper care and control, and whether such care and control is immediately available).

We find no reason to disturb the trial court's conclusion that DHS sustained its burden of proof by clear and convincing evidence that Child lacked proper parental care and control, and that such care and control was

not immediately available to Child from Parents.  Accordingly, we affirm the trial court order adjudicating Child dependent pursuant to 42 Pa.C.S. § 6302(1), and ordering her to remain in DHS's legal custody in her foster care placement.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/7/2015