651 A.2d 174

In the Interests of S.S. D.O.B. 4/26/88.

**Appeal of STEVEN S. and Lori S., Natural Parents.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1994.

Filed Dec. 14, 1994.

Walter A. Wisz, Johnstown, for appellant.

Before CIRILLO, TAMILIA and HOFFMAN, JJ.

CIRILLO, Judge:

Steven and Lori S. appeal from an order entered in the Court of Common Pleas of Cambria County placing their daughter, S.S., in foster care. We vacate and remand.

On November 20, 1990, a temporary order was issued removing S.S., born April 26, 1988, from the care and custody of her natural parents (Mr. and Mrs. S.). An adjudication and disposition hearing was held, whereby S.S. was found to be dependent. She was subsequently placed in the care and custody of appellee, Cambria County Children and Youth Services (CYS). On March 1, 1992, S.S. was placed with her paternal grandparents under CYS's supervision. Several months later, however, S.S. was removed from her grandparents' care and again placed in foster care. In furtherance of CYS's goal to reunite S.S. with her family, S.S. was ordered to undergo counseling, which began in October, 1992. The counseling continued for one and one-half years. During this time period, intermittent review hearings were held, resulting in continued dependency and foster care.

On May 26, 1993, another review hearing was held, this time to determine whether the goal of adoption would be a better alternative for S.S. S.S.'s therapist, Barbara Townley, testified that S.S. was suffering from an attachment disorder, and that she needed permanency and stability in her life. While Ms. Townley's basic assessment was a need for permanence, she had no personal knowledge of who was best suited to provide that permanence. The marriage/family counselor for Mr. and Mrs. S., Theresa Horner, also testified. In her opinion, there was little hope of facilitating reunification of the

family. Additionally, Amy Barzdo, a CYS caseworker, conceded that Mr. and Mrs. S. attended their scheduled visits with S.S., that they had established a clean, orderly residence, and that there had been no evidence of physical neglect or domestic violence since S.S.'s initial placement. Following this hearing, on May 26, 1993, the trial court found S.S. dependent, but ordered CYS to begin the process of returning her to her natural parents. Included in the order was a provision that a "[r]eview [was] to be held within six months if necessary." S.S. was returned to her parents two days after the order was issued.

A few months later, Mr. and Mrs. S. were informed that a review hearing was scheduled for September 8, 1993, just over three months after the May 26th hearing/order. At the outset of the September 8th hearing, counsel for Mr. S. requested a continuance until the expiration of the six month period cited in the May 26th order. The motion was denied and the hearing proceeded. Ms. Barzdo, S.S.'s CYS caseworker, and Ms. Townley, S.S.'s therapist, were the only two witnesses to testify at this hearing. Ms. Barzdo visited S.S.'s home (most visits were unscheduled) twenty-three times from the time S.S. was returned home until the September 8th hearing, while Ms. Townley saw S.S. approximately seven times during the same time period.

The testimony revealed that S.S.'s physical needs were being provided for by her parents; her emotional needs, however, appeared to be at risk. Specifically, during her three months at home, S.S.'s bed-wetting incidents increased significantly. S.S. also demonstrated outward sexual behavior in the form of sexually acting out on her brother and masturbating. According to both witnesses, although Mr. and Mrs. S. were involved in parenting classes and family therapy and counseling, they were not able to apply what they learned in terms of dealing with S.S.'s emotional needs. For example, it was stressed to Mr. and Mrs. S. from the outset not to punish S.S. for her bed-wetting. Nonetheless, S.S. received constant verbal and physical punishment for these incidents. Since S.S.'s return home, Mrs. S. has expressed her frustration at

not knowing how to cope with S.S., and how she is unable to deal with S.S.'s behavior. Both Mr. and Mrs. S. admitted to not knowing what to do when S.S. is acting out. Ms. Horner opined that Mr. and Mrs. S. would not benefit from further counseling because they lack the insight to respond to S.S.'s emotional needs. Ms. Horner's and Ms. Barzdo's assessment of S.S.'s situation, after three months with her natural parents, was that S.S. was still not receiving the structure, stability, and nurturing for which she was sent home and, since Mr. and Mrs. S. were not able to respond to S.S. in the way that she needs, despite all the services provided, an alternative home was appropriate.

At the conclusion of the hearing, the trial court entered an order removing S.S. from the care and custody of her parents and placing her in foster care, with a goal of permanency through adoption. This appeal followed.

Mr. and Mrs. S. raise the following issue for our consideration:

> Whether the trial court committed reversible error in applying a "best interests" standard rather than a "clear necessity" standard when determining if a child, who has been declared dependent and was previously placed in foster care, but who was returned to her parents on a temporary basis, should remain with her parents or be returned to foster care?

■■ It is a correct statement of the law, as the trial court states in its opinion, that once a child is adjudicated dependent, the issues of custody and continuation of foster care are determined according to a child's best interests. *In Interest of Sweeney,* 393 Pa.Super. 437, 439, 574 A.2d 690, 691 (1990). The *Sweeney* case, unlike the instant case, dealt with an appeal from an order which continued placement of a dependent child in foster care and which adopted a long-range goal of adoption for the child. In the case at hand, we are faced with an entirely different situation. Here, we have a child who was declared dependent, placed in CYS's custody, placed with her natural parents, and then removed. Given these

facts, we are convinced that the instant case is governed by this court's decision in *In Interest of Paul S.*, 380 Pa.Super. 476, 552 A.2d 288 (1988).

The facts in *Paul S.* are strikingly similar to the situation at hand. Paul, a nine-year-old, was declared dependent and was placed in custody of CYS. Paul had been residing with his parents for approximately three months on a trial basis when he was ordered to return to foster care. His parents appealed, contending that the trial court erred in applying a "best interest" standard rather than a "clear necessity" standard in determining whether Paul should be returned to foster care.

■ A child who has been adjudicated dependent may not be separated from his or her parents unless evidence is presented revealing that the separation is clearly necessary. *Id.* at 480–82, 552 A.2d at 290. After a child has been separated from his or her parents, a different standard applies, namely, custody will be awarded according to the child's best interests. *Id.* As we pointed out in *Paul S.*, and apply here as well, "[This is not a case] in which the parents of a child who has been adjudicated dependent, *and who remains in foster care*, seek to have the child returned to their home[;] [i]n such cases, the best interest standard clearly applies." *Id.* Turning to the language of the Juvenile Act for guidance as to which standard to apply, this court recognized the following:

> the purposes of the Act include "preserv[ing] the unity of the family *whenever possible*" and providing for the child's care "in a family environment *whenever possible*, separating the child from parents *only when necessary* for his welfare...." 42 Pa.C.S. § 6301(b)(1), (3) (emphasis added). Furthermore, the Act directs that at each disposition review hearing, the court shall determine, among other things, the *continuing necessity* for the child's placement. 42 Pa.C.S. § 6351(f).

*Id.* at 482, 552 A.2d at 291. The court in *Paul S.* went on to conclude:

> The repeated emphasis in the Act upon the desirability of preserving the family unit persuades us that "clear necessi-

ty" is the appropriate standard in the present case. Even though Paul was returned to his natural family on a temporary, trial basis, the family was nevertheless reunited, and the Act does not suggest that a standard less strict than "clear necessity" should apply if Paul's removal from the family was once again sought.

*Id.*

Applying the rule stated in *Paul S.* to the case now before us, we conclude that the trial court erred when, in deciding to return S.S. to foster care, it based its determination on S.S.'s best interests. That portion of the order addressing S.S.'s placement is, therefore, vacated.

Having assumed our conclusion that a clear necessity standard is appropriate, Mr. and Mrs. S. ask that S.S. be returned to them immediately. Additionally, CYS asserts that the trial court committed a harmless error in applying the wrong standard of review and a remand is not necessary. As we ruled in *Paul S.*, however, it is not for this court, but for the trial court as factfinder, to determine whether S.S.'s removal from her family was clearly necessary.[1]

Assuming the trial court finds clear necessity present to place S.S. for adoption consideration, we caution that, in proceeding toward termination of parental rights, the trial court must apply yet another set of standards. Termination of parental rights must be based upon a standard of clear and convincing evidence, as in placement for foster care; again, best interest does not control but rather application of the criteria provided by 23 Pa.C.S.A. § 2551, **Grounds for involuntary termination.** This section provides the parameters for meeting the specific legal and factual conditions giving rise to the power of the state to terminate parental rights. Accordingly, we remand the case to the trial court to make the necessary determination.

Vacated and remanded. Jurisdiction relinquished.

---

1. S.S. shall remain in foster care pending the trial court's decision on remand.