J-S21034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  S.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.K., MOTHER | No. 2576 EDA 2014 |

Appeal from the Order Entered July 23, 2014
in the Court of Common Pleas of Delaware County
Civil Division at No.: CP-23-DP-0000012-2013

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MAY 08, 2015**

S.K. (Mother) appeals from the order of the Court of Common Pleas of Delaware County, entered July 23, 2014, that changed the goal of her daughter, S.K. (Child), born in September of 2006, from reunification to adoption.  We affirm.

The record supports the following recitation of the facts of this case. On January 4, 2013, Children and Youth Services of Delaware County (CYS) received a referral from East Lansdowne Emergency Medical Transport, stating that a six-year old child was without proper supervision because Mother had left the child home alone.  This was allegedly not the first time. Mother's landlord saw Child come home from school and later found her

_____

[*] Retired Senior Judge assigned to the Superior Court.

alone on a mattress on the floor with an electric space heater. The landlord took Child home with her when Mother could not be located. The police went to Mother's residence at 6:45 P.M., and when Mother arrived, she explained that she took a short day trip to New York City while Child was at school. On February 4, 2013, the trial court found that Child lacked proper parental care and control, adjudicated her dependent, and placed her in foster care.

Over the course of the next eighteen months, CYS provided services to Mother that included individual and family counseling; transportation; family visitation; referral to the Transitional Housing Program; referral to Parents and Children Together; referral to the Elwyn Clinical Visitation Program; collaboration with Northwestern Human Services; collaboration with the Linh Center regarding family therapy; and psychiatric and psychological evaluations.[1]

The trial court held hearings on the case on the following dates with the results indicated: January 29, 2013, adjudicated dependent, legal and physical custody to CYS, Child to foster care; June 18, 2013, permanency review, legal and physical custody remained with CYS; August 27, 2013, permanency review, legal and physical custody remained with CYS;

_____

[1] Evaluation showed that Mother has suffered extensive and ongoing untreated mental illness since 2004. (*See* Trial Court Adjudication, 12/12/14, at unnumbered page 2 ¶ 15).

November 19, 2013, permanency review, legal and physical custody remained with CYS; March 13, 2014, permanency review, legal and physical custody remained with CYS; June 11, 2014, goal change hearing with CYS seeking goal change from reunification to adoption, legal and physical custody remained with CYS and goal status not altered; July 16, 2014, goal change hearing, goal changed from reunification to adoption.

Mother timely filed her notice of appeal and statement of errors complained of on appeal on August 22, 2014. *See* Pa.R.A.P. 1925(a)(2)(i). On December 12, 2014, the trial court entered an Adjudication containing detailed findings of fact and conclusions of law in support of its decision to change Child's goal from reunification to adoption. On the same date, December 12, 2014, the trial court entered an opinion in which it incorporated and referred this Court to its Adjudication. *See* Pa.R.A.P. 1925(a).

Mother presents the following questions for our review:

1. Did the [t]rial [c]ourt abuse its discretion in converting a permanency review hearing to a goal change hearing without giving prior notice to [Mother], thereby depriving [Mother] [of] the opportunity to present the testimony of her expert witness to rebut the testimony and expert report of the [CYS] provided psychiatrist?

2. Did the trial court abuse its discretion by not considering the fact that [Mother] did not receive the court summary or proposed court order for this hearing until midway through the hearing itself?

(Mother's Brief, at 10).

Our Supreme Court set forth our standard of review for dependency cases as follows.

. . . [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

To adjudicate a child dependent, a trial court must determine that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302(1) (defining "Dependent child").

A dependency hearing is a two-stage process. The first stage requires the trial court to hear evidence on the dependency petition and determine whether the child is dependent pursuant to the standards set forth in section 6302. *See* 42 Pa.C.S.A. § 6341(a). If it finds clear and convincing evidence that the child is dependent, the court may move to the second stage, an adjudicatory hearing, where it must make an appropriate disposition based on an inquiry into the best interests of the child. *See* 42 Pa.C.S.A. § 6341(c); *In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007).

In accordance with the overarching purpose of the Juvenile Act to preserve family unity wherever possible, **see** 42 Pa.C.S.A. § 6301(b)(1), a child will only be declared dependent when he or she is presently without proper parental care or control, and when such care and control are not immediately available. **See In the Interest of R.T.**, 592 A.2d 55, 57 (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." **In the Matter of C.R.S.**, 696 A.2d 840, 845 (Pa. Super. 1997) (citation omitted).

In regard to when a child should be removed from parental custody, we have stated:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

**In Interest of K.B.**, 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, we have stated, "it is not for this [C]ourt, but for the trial court as factfinder, to determine whether [a child's] removal from her family was clearly necessary." **In the Interest of S.S.**, 651 A.2d 174, 177 (Pa. Super. 1994) (footnote omitted).

Furthermore,

> Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over **all** other considerations, including the rights of the parents.

*In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) (emphasis in original; citations and footnotes omitted).

The matters to be determined at permanency hearings, including the determination as to a change of permanency goal to adoption, are set forth at section 6351(f) and (f.1) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f) and (f.1). Section 6351(g) directs the trial court to enter an order, on the basis of its determination made under subsection (f.1), that directs the continuation, modification, or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child. *See* 42 Pa.C.S.A. § 6351(g). As this Court has held, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re N.C.*, *supra* at 824 (citation omitted).

Here, Mother first argues that the trial court abused its discretion by "converting [the July 16, 2014] permanency review hearing to a goal change hearing" without notice to her, and that this abuse prevented her from

presenting the testimony of her expert witness to rebut CYS's expert. (Mother's Brief, at 10). This issue is waived.

Specifically, our review of the record reveals that Mother's counsel addressed the issue of rebuttal testimony as follows:

> Your Honor, I have—as I said, we have—[Mother] has met with other psychological and psychiatric professionals that could not be here today, and there are financial constraints on having them come in and testify on her behalf. . . .

(N.T. Hearing, 7/16/14, at 53). This is not an objection to lack of notice; it is an admission that counsel had potential witnesses that he did not call to testify. Further, during the hearing, counsel for CYS and caseworker Noel Torres characterized the hearing as a goal change hearing, and Torres stated the agency's intention to continue to move forward with a goal change to adoption. (**See id.** at 7-8). Mother's counsel did not object or raise the issue of lack of notice. (**See id.**). Thus, Mother has waived her first issue by raising it for the first time on appeal. **See** Pa.R.A.P. 302(a).

Moreover, Mother's claim would not merit relief. A permanency review hearing is not a separate hearing from a goal change hearing. At a permanency review hearing, the trial court is tasked with, among other things, determining the necessity, appropriateness, and feasibility of the current goal for a child. 42 Pa.C.S.A. § 6351(f) provides, in pertinent part:

> **(f) Matters to be determined at permanency hearing.—**At each permanency hearing, a court shall determine all of the following:
>
> > (1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

42 Pa.C.S.A. § 6351(f)(1)-(4).

Section 6351(f.1)(2) provides that, based on the determinations under subsection (f) and all relevant evidence presented at the hearing, the trial court shall determine "**[i]f and when the child will be placed for adoption**, and the county agency will file for termination of parental rights in cases where return to the child's parent . . . is not best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S.A. § 6351(f.1)(2) (emphasis added).

In the instant case, at the time of the hearing on July 16, 2014, Child had been in placement for seventeen months and the trial court had before it the record made at several prior hearings. Counsel should have been aware that the question of Child's goal change to adoption was ripe for consideration, especially because counsel acknowledges that the trial court considered the issue of Child's goal at the prior hearing held on June 11, 2014. (**See** Mother's Brief, at 12; **see also** Trial Court Adjudication, 12/12/14, at unnumbered page 4 ¶ 29). Therefore, Mother's first claim of error would not merit relief.

In her second issue, Mother contends that the trial court erred by "granting a goal change when [CYS] never provided a court summary to [her] . . . in advance of [the] July 16, 2014 hearing," thereby depriving her of notice "that there would be witnesses present other than CYS caseworkers[.]" (Mother's Brief, at 17) (some capitalization omitted).[2] This issue is also waived.

Specifically, the record reflects that, during the July 16, 2014 hearing, counsel for CYS asked Mother's counsel if he had a copy of the summary, and he replied that he did not. (**See** N.T Hearing, 7/16/14, at 11-12). Counsel for CYS then provided Mother's counsel with the summary, stating:

> I'm just indicating attached to the summary is the report of Dr. Mechanick so if counsel wants to delve into the diagnosis of Dr. Mechanick, I want to give him the opportunity of looking at the report and he may call Dr. Mechanick as on cross.

(**Id.** at 12). Mother's counsel then stated, "If you'd permit me one minute[,]" and the parties went off the record. (**Id.**) When they returned, Mother's counsel examined Dr. Mechanick and, at the conclusion of his testimony, CYS rested its case. (**See id.** at 13, 24). Mother's counsel then called Mother to the stand. He did not make any objection to receiving the summary during the hearing. (**See id.** at 11-13, 24-25). Therefore, Mother

_____

[2] The notes of testimony from the hearing show that the only witnesses who testified were CYS caseworker Noel Torres, CYS casework supervisor Kyesha Durrant, psychiatrist Dr. Stephen Mechanick, and Mother. (**See** N.T. Hearing, 7/16/14, at 2-3, 25).

has waived this issue by raising it for the first time on appeal.  ***See*** Pa.R.A.P.

302(a).  Accordingly, for the reasons stated, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2015