J-S15045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: V.F., MOTHER | |
| | No. 2461 EDA 2015 |

Appeal from the Order Dated July 6, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-DP-0001531-2013
FID# 51-FN-003007-2013

| | |
|---|---|
| IN THE INTEREST OF: B.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: V.F., MOTHER | |
| | No. 2462 EDA 2015 |

Appeal from the Order Dated July 6, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-DP-0001532-2013
FID# 51-FN-003007-2013

J-S15045-16

| IN THE INTEREST OF: M.F., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.F., MOTHER | No. 2463 EDA 2015 |

Appeal from the Order Dated July 6, 2015
in the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-DP-0001533-2013
FID# 51-FN-003007-2013

BEFORE: BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED APRIL 15, 2016**

In these consolidated appeals[1], V.F. (Mother), appeals from the orders of the Court of Common Pleas of Philadelphia County, entered July 6, 2015, that terminated the trial court's supervision of her daughter, L.F., her son B.F., and her daughter M.F. (Children), triplets born on September 18, 2008 and leaving them in the care and custody of D.G. (Father). The order also directed Mother to stay away from the Children, from Father, and from Father's home. We affirm.

We refer the reader to the facts and the procedural history of this matter as the trial court relates them in its opinion entered on September

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated these appeals, *sua sponte*, on September 10, 2015. **See** Pa.R.A.P. 513.

- 2 -

22, 2015, which facts and procedural history we adopt as our own for the purposes of this memorandum.

The trial court hearing that resulted in the order appealed from took place on July 6, 2015. The sole individual who testified at that hearing was Dwayne Jones, a social worker with Philadelphia's Department of Human Services. The trial court entered its order on July 6, 2015. Mother filed her notice of appeal and statement of errors complained of on appeal on August 5, 2015. **See** Pa.R.A.P. 1925(a)(2)(i).

Mother presents the following questions for our review:

A. Whether the court erred in finding that the circumstances that necessitated the dependency adjudication have been alleviated[?]

B. Whether the court erred in finding that there were no safety or dependency issues in the home[?]

C. Whether the court erred in finding the stay away order as to [M]other to stand and that Mother to stay away from the [C]hildren[?]

D. Whether it is in the best interests of the [C]hildren for DHS supervision to remain in place, for the [C]hildren to be removed from [F]ather's home, and for the [C]hildren to be returned to [M]other[?]

E. Whether the [trial] court erred in entering the above findings, when [M]other was not in attendance[?]

(Mother's Brief, at 3).

Our Supreme Court set forth our standard of review for dependency cases as follows.

- 3 -

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

To adjudicate a child dependent, a trial court must determine that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.

A dependency hearing is a two-stage process. The first stage requires the trial court to hear evidence on the dependency petition and determine whether the child is dependent pursuant to the standards set forth in section 6302. *See* 42 Pa.C.S.A. § 6341(a). If it finds clear and convincing evidence that the child is dependent, the court may move to the second stage, an adjudicatory hearing where it must make an appropriate disposition based on an inquiry into the best interests of the child. *See* 42 Pa.C.S.A. § 6341(c); *In re B.S.*, 923 A.2d 517, 521 (Pa. Super. 2007). "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In*

*the Matter of C.R.S.*, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act to preserve family unity when possible, *see* 42 Pa.C.S.A. § 6301(b)(1), a child will only be declared dependent when he is presently without proper parental care or control, and when such care and control are not immediately available. *See In the Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *C.R.S.*, *supra* at 845 (citation omitted).

In regard to when a child should be removed from parental custody, we have stated:

> The law is clear that a child should be removed from her parent's custody and placed in the custody of a state agency only upon a showing that removal is clearly necessary for the child's well-being. In addition, this [C]ourt had held that clear necessity for removal is not shown until the hearing court determines that alternative services that would enable the child to remain with her family are unfeasible.

*In Interest of K.B.*, 419 A.2d 508, 515 (Pa. Super. 1980) (citations omitted). In addition, we have stated, "it is not for this [C]ourt, but for the trial court as factfinder, to determine whether [a child's] removal from her family was clearly necessary." *In the Interest of S.S.*, 651 A.2d 174, 177 (Pa. Super. 1994).

- 5 -

We have thoroughly reviewed the record, briefs, and the applicable law, and determined that the record before us contains sufficient evidence to support the trial court's determination that the Children no longer require trial court supervision, and that it was proper and necessary to order Mother to stay away from Father and the Children.

In addition, our close reading of the trial court's opinion reveals that the trial court carefully and methodically reviewed the evidence and ably addressed Mother's issues presented on appeal. Therefore, we affirm on the basis of the court's opinion.

Accordingly, we affirm the trial court's orders entered July 6, 2015 that terminated its supervision of the Children and ordered Mother to continue to stay away from Father and the Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2016

**IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION**

IN the Interest of L.F., B.F., and M.F.  :CP-51-DP-0001531-2013
               :CP-51-DP-0001532-2013
               :CP-51-DP-0001533-2013
               :51-FN-003007-2013
               :2461/2462/2463 EDA 2015

APPEAL OF: V.F., Mother

**OPINION**

Fernandez, J.:

Appellant V.F., ("Mother"), appeals from the order entered on July 6, 2015, granting the request of the Department of Human Services of Philadelphia County ("DHS"), to terminate Court Supervision to L.F. ("Child 1"), B.F. ("Child 2"), and M.F. ("Child 3") collectively referred as ("Children") pursuant to the Juvenile Act, 42 Pa. C.S. §6351(f). Athena Dooley, Esquire, counsel for Mother, filed a timely Notice of Appeal with a Statement of Errors Complained of pursuant to Rule 1925(b).

**Factual and Procedural Background:**

This family has a long history with DHS going back to June 2011. In June 2011, DHS implemented In-Home Protective Services ("IHPS") to ensure the medical needs of the children to assist Mother with their care; and to assist Mother with enrolling in drug and alcohol and mental health treatment. In August 2011, DHS received an Emergency General Protective Services (EGPS) report alleging that Mother left the Children at home unsupervised while she went to the pharmacy. The report alleged that the home was in disarray, with bleach, clothing, and cereal strewn on the floor; that home lacked air conditioning; that Mother was not taking her medication for mental health needs and appeared to be under the influence of an unknown substance. This report was substantiated. IHPS and DHS continued to service the family and make sure that the Children's needs were being met. Child 1 had a G-tube with no signs of infection, received services through Childlink, including physical, occupational, and speech therapy, and was being

[1]

monitored by a nutritionist and a daily nurse. Child 2 used a protective helmet. Child 3 was also seeing a nutritionist. On February 16, 2012, IHPS and DHS determined that the family no longer needed assistance and the case was closed.

On November 7, 2012, DHS received another EGPS report alleging that the Children were being neglected. It further alleged that Mother becomes violent when she smokes PCP; that she is aggressive towards paternal grandparents, taking weapons with her when she visits their home; that mother stabbed the Children's father; that there is a history of domestic violence between Mother and father; and that Mother has been overheard discussing killing the Children. The report went on to allege that the home is dirty and cluttered, and that Mother was incarcerated from October 29, 2012, to November 1, 2012. This report was substantiated. Again for a second time on January 7, 2013, IHPS was implemented to ensure the needs of the Children were met and to assist Mother enroll in drug and alcohol and mental health treatment.

In May 2013, Mother was discharged from her drug and alcohol outpatient treatment at the Consortium due to her non-compliance. At that time, it was recommended that Mother attend an inpatient program, but it was denied by Community Behavioral Health due to Mother's history of non-compliance. Mother was referred to the NET for an out-patient program. On June 25, 2013, Mother tested positive at the NET for drug use which included multiple substances. On June 26, 2013, Mother was admitted to Gaudenzia for inpatient drug and alcohol treatment. On June 28, 2013, Mother was discharged from Gaudenzia for failure to disclose needed information about the children prior to her admittance. On July 10, 2013, Mother was hospitalized at Mercy Hospital for homicidal ideations and PCP use. It was recommended that Mother enter a dual diagnosis program at the Gaudenzia House, and she was admitted on July 11, 2013. On July 16, 2013, Mother left Gaudenzia House against medical advice. The children were placed with maternal aunts, and Mother was made aware of it. A safety plan was implemented. On July 18, 2013, Mother came to an aunt's house and took two of the children, violating the safety plan. Mother admitted to DHS that she was still using PCP. DHS requested an Order of Protective Custody ("OPC") on July 19, 2013. At the Shelter Care Hearing on July 22, 2013, the OPC was lifted and a temporary commit was given to DHS. Parents were given supervised weekly visits and father was to continue with the domestic violence program at Menergy. On August 19, 2013, the Children were adjudicated dependent based on present inability of the parents and placed with

relatives. Parents' visits were to continue separate and supervised at the agency. Parents were further ordered to comply with their FSP objectives. Mother was referred to the Clinical Evaluation Unit ("CEU") for monitoring and a forthwith drug screen, and to receive a parenting capacity evaluation. Father was to continue attending domestic violence and anger management program.

At a Permanency Review on November 19, 2013, Mother was found moderately compliant and father was fully compliant with their respective FSP objectives. Mother was re-referred to the CEU for a forthwith drug screen and dual diagnosis treatment at NU-Stop until successful completion, parenting, and domestic violence. Due to Mother's aggressiveness and erratic behavior, Mother's supervised visits were moved to the Family Court Nursery and a Stay-Away Order as to Mother was issued for father's home. Mother was also to attend the second part of her parenting capacity evaluation. Father was awarded unsupervised day visits with overnights by agreement of the parties. The trial court found that DHS made reasonable efforts to finalize the Children's permanency plan.

On January 28, 2014, at a Permanency Hearing, the Children were to remain as committed and placed through Episcopal Community Services. Mother was referred to the Behavioral Health System ("BHS") for mental health services and re-referred to the CEU for a forthwith drug screen and monitoring. DHS to re-refer Mother for a parenting capacity evaluation and Mother is to attend and complete the evaluation. The trial court found reasonable efforts. Mother's visits were modified to bi-weekly for one hour at the Family Court Nursery. Father's unsupervised visits are to continue.

On March 11, 2014, at a Permanency Hearing, the trial court found that Mother posed a grave threat to the Children based on testimony and an incident report from the Family Court Nursery of February 2, 2014, whereby Mother was escorted out of the courthouse due to inappropriate activity in the bathroom with Child 3. Mother's visits with all three Children were suspended. At the hearing, the trial court became aware that Mother was arrested on February 2014 and was still incarcerated at the Riverside Philadelphia Correctional facility on a criminal matter. Father was to continue with his unsupervised day visits. A report from the CEU as to Mother was incorporated

[3]

by reference into the record. Reasonable efforts were made by DHS to finalize the Children's permanency plan.

On May 29, 2014, at a Permanency Hearing, Mother was found to be minimally compliant and father fully compliant with their respective FSP objectives. The testimony was that Mother was released from jail and is in an in-patient program at Girard Medical Center. This program is not a dual diagnosis program, which does not address her mental health needs. Mother continues to provide positive drug screens. Mother did not complete the second part of her parenting capacity evaluation. Mother was referred to BHS for evaluation and consultation upon discharge from Girard Medical Center. Mother's visits were to remain suspended. Father's visits were modified to overnight for two nights, and Children may be reunified with father prior to next court date by agreement of the parties. Again, DHS made reasonable efforts to finalize the Children's permanency plan.

At a Permanency Hearing on July 28, 2014, Mother was moderately compliant and father fully compliant with their respective FSP objectives. Mother was engaged in a dual diagnosis program after being discharged from Girard Medical Center. Mother did not complete the second part of the parenting capacity evaluation, and does not have appropriate housing. Visits with Mother continued suspended due to an incident whereby Mother went to foster parent's home on July 19, 2014, and displayed inappropriate behavior in the Children's presence. The trial court re-issued the Stay-Away Order against Mother to stay away from father's employment location and home, and issued a new Stay-Away Order against Mother to stay away from foster parent's home, the Children, the Children's school, and all agencies the Children receive services. DHS was to assist father in obtaining a safe house, and Children may be reunified with father prior to the next court date. Father's overnight and day visits were to continue. Father had completed all of his FSP objectives, and participates in all medical appointments. The trial court found reasonable efforts by DHS to finalize the Children's permanency plan.

At a Permanency Hearing on October 22, 2014, Mother was minimally compliant and father substantially compliant with their respective FSP objectives. Mother continues to not have appropriate housing. DHS is unable to verify whether Mother is attending her dual diagnosis program. Mother does not provide documentation and/or sign releases. Mother, for the fourth

[4]

time, cancelled the second part of her parenting capacity evaluation. Mother has now engaged in a parenting class. Mother's visits continued to be suspended since she poses a grave threat to the Children and the Stay-Away Orders against Mother stand. As to father, DHS nurse is to go to father's home to provide medical training. Father is to continue with unsupervised visits with reunification to occur in the week of November 10, 2014.

City Solicitor may submit an administrative order discharging the commit and implementing supervision with appropriate services. On November 25, 2014, DHS submitted an order transferring legal custody to father and discharging the commit. Children were reunified with father on November 14, 2014.

At a Permanency Hearing on January 22, 2015, Mother was not compliant and father was fully compliant with their respective FSP objectives. Children were with father and doing well. There was testimony that Mother was at a women's in-transition shelter. Also, she had not completed her parenting capacity evaluation, a dual diagnosis treatment program, or parenting classes. In violation of the Stay-Away Order of July 28, 2014, Mother is harassing father by calling his place of employment causing management to reprimand father, leaving items on father's porch, and attempting to enter father's home, and on one occasion actually entering father's home while he was at work and Children were with a babysitter, having contact with Children against the court order. The 14th Police District was called in order for Mother to leave the house. Additionally, on December 17, 2014, Mother went to Children's school and attempted to see the Children against the court order. Based on the testimony, the trial court found Mother in contempt of court for violation of court order and ordered Mother to be held in custody over the weekend of January 24, 2015. Mother was present in the courtroom and through her attorney had the opportunity to cross-examine all witnesses. The trial court ordered the Stay-Away Orders and supervision to stand. Reasonable efforts were made by DHS to finalize the Children's permanency plan.

On April 6, 2015, at a Permanency Hearing, Mother was found minimally compliant and father fully compliant with their respective FSP objectives. Children were doing well with father and receiving all of their services. Supervision and Stay-Away Orders were ordered to stand with a view to discharge at the next hearing. Mother was present at the bar of the court and had notice of the next court hearing.

[5]

On July 6, 2015, at a Permanency Hearing, the trial court found that the Children were doing well and receiving all services in father's care. The circumstances which necessitated the dependency adjudication have been alleviated and the Children are safe with father. Stay-Away Order as to Mother is to stand. Mother has not engaged or successfully completed her FSP objectives, in particular her mental health and drug and alcohol treatment, and is still posing a grave threat to the Children. Mother's visits remain suspended. On July 6, 2015, the trial court terminated court supervision of the Children. On August 5, 2015, Mother's attorney filed a timely Notice of Appeal as to the three children.

**Discussion:**

On Appeal, Mother raises the following issues:

1. The court erred in finding that the circumstances that necessitated the dependency adjudication have been alleviated.
2. The court erred in finding that there were no safety or dependency issues in the home.
3. The court erred in finding the Stay-Away Order as to Mother to stand and that Mother to stay away from Children.
4. It is in the best interests of the Children for DHS supervision to remain in place, for the Children to be removed from father's home, and for the Children to be returned to Mother.
5. The court erred in entering the above findings, when Mother was not in attendance.
6. Permission is respectfully requested to submit additional ISSUES or ERRORS in support of the within APPEAL as shall appear after REVIEW OF THE TRANSCRIPT is completed.

A change in a child's permanency goal is governed by the Pennsylvania Juvenile Act at a permanency review hearing. See 42 Pa. C.S. §6351 (f). Furthermore, the Pennsylvania Rules of Juvenile Court Procedure for dependency under Rule 1631 allows the trial court on its own motion to move for termination of supervision when court-ordered services from the county agency are no longer needed and the condition that necessitated the dependency adjudication and placement have been alleviated and child is reunified with guardian. See Pa. R.J.C.P. 1631 (a) (2). It should be noted that DHS also requested that court supervision be terminated. (N.T. 7/6/15, pg. 4). Section 6351 (f) lists matters to be determined at a permanency hearing[1]. The trial court must

---

[1] Section 6351 (f) Matters to be determined at permanency hearing. At each hearing, the court shall:
   (1) determine the continuing necessity and appropriateness of the placement;
   (2) determine the appropriateness, feasibility and extent of compliance with the permanency plan developed for the child;

focus on the Children and determine the goal in accordance to the Children's best interests, not those of the parents. In re S.B., 943 A.2d 973, 978 (Pa. Super.2008). "Safety, permanency and well-being of the child must take precedence over all consideration. "See id. (Citing In re N.C., 909 A.2D 8/8, 823 (Pa. Super. 2006). A review of the evidentiary record, the facts and procedural history of these matters overwhelmingly supports the conclusion of the trial court that the termination of court supervision was appropriate and the trial court did not err or abuse its discretion in finding that there were no safety or dependency issues in father's home; that the Stay-Away Order against Mother are to stand; that it was in the best interest of the Children to remain with father and not be returned to Mother; and that Mother's visitation remain suspended. Mother's appeal issues are without merit. DHS social worker's testimony was unwavering and credible.

All three Children are at home with father. Children were reunified with Father on November 14, 2014. Father continues to be fully compliant and provide all necessary and appropriate care for the Children. (N.T. 7/6/15, pgs. 6, 8-9, 12). There is no safety or dependency issues in father's home. (N.T. 7/6/15, pgs. 7, 11). Father has alleviated the conditions that brought the Children into DHS care. The goal of reunification with father has been achieved since the Children are safe and living with father. (N.T. 7/6/15, pgs.4-5, 11). It is in the best interest that the Children continue to receive the love, comfort, and stability in father's home. Mother has failed to comply with the permanency plan to attain reunification with the Children. (N.T. 7/6/15, pgs. 10-12). Mother cannot and will not ensure the Children's safety, stability and well-being. Mother still has not completed successfully a drug and alcohol and mental health treatment program. Mother refused to sign releases to verify whether she is even enrolled in any programs. Due to Mother's history of not attending, and cancelling her appointments for the second part of her parental capacity evaluation, the provider is unable to reschedule her for another appointment. (N.T. 7/6/15, pgs. 10-11). It is not in the best interest for the Children to be returned to Mother. For that matter, Mother continues to harass father at his home in attempt to see the Children. Mother has attempted to go to medical appointments and Children's school graduation in violation of the court Stay-

---

(3) determine the extent of progress made toward alleviating the circumstances which necessitated the original placement;
(4) determine the appropriateness and feasibility of the current placement goal for the child;
(5) project a likely date by which the goal for the child might be achieved;
(6) determine whether the child is safe.

Away Orders. At all times, Mother has been kept away from the Children by effective security due to father's due diligence of having notified the appropriate people to be on the lookout for Mother. (N.T. 7/6/15, pgs. 6-7). Mother continues to be a grave threat to the safety of the Children. Consequently, the trial court did not err in keeping the Stay-Away Order as to Mother to keep her away from the Children and her visitation suspended. Finally, for whatever the reason, Mother failed to appear at the review hearing. It was due to her own actions that Mother did not show up at the hearing. Mother was well aware of the court date since she was present in the courtroom on April 6, 2015, when the July 6, 2015, court date was given out.

**Conclusion:**

For the aforementioned reasons, the trial court did not abuse its discretion in terminating the court supervision of the Children. Accordingly, the Order entered on July 6, 2015, should be affirmed.

By the Court:

Joseph Fernandes, J.

[8]

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

IN RE: L.F., B.F., and M.F.

:APPELLATE #2461/2462/2463 EDA 2015
:Docket No.: CP-51-DP-0001531-2013
:Docket No.: CP-51-DP-0001532-2013
:Docket No.: CP-51-DP-0001533-2013

APPEAL OF: V.F., Mother

**PROOF OF SERVICE**

I hereby certify that this court is serving, today Tuesday, September 22, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Athena M. Dooley, Esquire
849 E. Locust Avenue
Philadelphia, Pennsylvania 19138
Attorney for Mother

Claire Leotta, Esquire
12325 Academy Road, Suite 52
Philadelphia, Pennsylvania 19154
Child Advocate

Lue B. Frierson, Esquire
2333 St. Albans Place
Philadelphia, Pennsylvania 19146
Attorney for Father

Jeri Behrman, Esquire
Assistant City Solicitor
1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102

BY THE COURT:

Honorable Joseph L. Fernandes