552 A.2d 288

**In re In the Interest of PAUL S.—Date of Birth January 26, 1979**

**Appeal of JOSEPH S. and Pearl S.**

Superior Court of Pennsylvania.

Argued Aug. 31, 1988.

Filed Dec. 30, 1988.

James Johnson, State College, for appellants.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

478

ROWLEY, Judge:

This appeal of Joseph and Pearl S., the parents of nine-year-old Paul S., is from the trial court's order of September 25, 1987, directing that Paul be returned to foster care. Paul, who had been declared dependent and placed in the legal custody of appellee, Clearfield County Children and Youth Services (hereinafter "CYS"), had been residing with appellants for approximately three months on a temporary, trial basis.

Appellants raise three issues in this appeal: 1) whether the trial court erred in applying a "best interests" rather than a "clear necessity" standard in determining whether Paul should be returned to foster care; 2) if the "clear necessity" standard is appropriate, whether the standard was met in this case [1]; and 3) whether the trial court erred in allowing Dona Braznock, a CYS caseworker, to give opinion testimony on the ultimate issue of where Paul should live. For the reasons set forth below, we reverse the trial court's order of September 25, 1987, and remand the case to the trial court for a determination in accordance with the "clear necessity" standard.

The facts of the case, briefly summarized, are as follows: Paul was born on January 26, 1979. On May 28, 1982, CYS petitioned the court for an interim emergency order of custody with regard to Paul, asserting that appellants' residence was unlivable owing to, *inter alia*, lack of running water and electricity, inadequate heat, and insufficient food. The court entered an emergency custody order that same day, and Paul was removed from appellants' home and taken into the custody of CYS. On June 3, 1982, the court entered as a court order the stipulation of appellants, CYS, and Paul's guardian ad litem that Paul was a dependent child within the meaning of the Juvenile Act. Paul's placement with a foster family was periodically reviewed by the trial court over the next several years, with appellants

1. The first and second issues are presented in appellants' brief as a single issue: Should physical custody of Paul S. have remained with his parents?

being allowed regular visitation with Paul. Eventually arrangements were made for Paul to have overnight visits with appellants on weekends; extended visits subsequently lasted up to seven days.

On June 17, 1987, the court entered an order continuing legal custody of Paul with CYS; granting temporary physical custody of Paul to appellants for approximately six weeks, their custody to begin at the end of the then-current school year; directing both CYS and Lutheran Social Services, whose caseworker had been working with appellants, to monitor and evaluate appellants' home and Paul's placement therein; and giving CYS the right to supervise the placement. A hearing was subsequently held on September 2 and 4, 1987, to review Paul's placement and disposition, with testimony being taken from Dona Braznock, the CYS caseworker; Dorothy Nixon, appellants' neighbor; Paul's twenty-one-year-old brother, Bill S.; Pearl S., Paul's mother; and Beverly Hatten, Paul's foster mother. In addition, Paul, who suffers from a speech problem and learning disabilities, was interviewed by Judge Ammerman in chambers.

In an order filed September 25, 1987, the trial court, finding that Paul continued to be dependent and that his best interest and permanent welfare would be served by his return to foster care "pending a hopeful change in the conduct and circumstances of the parents resulting from the initiation of remedial action" by CYS and Lutheran Social Services, directed that Paul be returned to foster care forthwith, with legal custody to continue with CYS. In the order and a subsequently filed opinion, Judge Ammerman explained that his decision was based on the history of the case, having taken judicial notice of all prior proceedings, and on the opinion of the CYS caseworker, Dona Braznock, that conditions were deteriorating at appellants' home. This appeal followed.

In their first issue, appellants argue that the trial court erred when it determined, based on a "best interests of the child" standard, that Paul should be returned to

foster care. Only upon a showing of "clear necessity," appellants contend, can a child be removed from the parental home. Appellee counters that where, as here, the child in question has been adjudicated dependent, decisions concerning the child's placement should be made on the basis of the child's best interests.

In order to evaluate appellants' claim, we must briefly delineate the procedure that follows the filing of a petition alleging that a child is dependent under the terms of the Juvenile Act. Initially the court must determine whether, on the basis of clear and convincing evidence, the child in question is dependent. *In Interest of Ryan Michael C.*, 294 Pa.Super. 417, 420, 440 A.2d 535, 536 (1982); *In Interest of Pernishek*, 268 Pa.Super. 447, 457, 408 A.2d 872, 877 (1979). If a finding of dependency is made, the court then proceeds to consider possible dispositions. Pursuant to 42 Pa.C.S. § 6351(b), the court may not enter an order removing a dependent child from his or her home without first finding

(1) that continuation of the child in his home would be contrary to the welfare of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home.[2]

2. The language of the statute is in accordance with the federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670 et seq., which requires that juvenile courts, in cases where federal reimbursement is sought, 1) determine, prior to placing a child in foster care, whether reasonable efforts have been made to enable the child to remain safely at home; and 2) determine whether reasonable

In evaluating possible dispositions, the court is guided by the purposes of the Juvenile Act, among which are "[t]o preserve the unity of the family whenever possible," 42 Pa.C.S. § 6301(b)(1), and to provide for the child's care, protection, and development "in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety," 42 Pa.C.S. § 6301(b)(3). Thus, even a child who has been adjudicated dependent may not be separated from his or her parents unless evidence is presented showing that such a separation is "clearly necessary." *Ryan Michael C.*, *supra; Pernishek, supra.*

After a child has been separated from his or her parents, a different standard applies:

> [O]nce the child has been taken from the parents, the court will appraise the evidence, and award custody, according to the child's best interests. In applying this standard the court will recognize the natural parents' claim to custody. In a given case this claim may prove of decisive weight. . . .

*In re Donna W.*, 284 Pa.Super. 338, 343–44, 425 A.2d 1132, 1134–35 (1981) (quoting *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 391, 324 A.2d 562, 572 (1974)). After a child has been removed from the parental home, the court is required to conduct regular disposition review hearings to determine, *inter alia*, the continuing necessity for and appropriateness of the placement and the progress being made toward alleviating the circumstances which necessitated the placement. 42 Pa. C.S. §§ 6351(e), (f).

The case before us is not one in which the parents of a child who has been adjudicated dependent, *and who remains in foster care*, seek to have the child returned to their home. In such cases, the best interests standard clearly applies. *In re Bennage*, 303 Pa.Super. 318, 320, 449

efforts have been made to reunite children in foster care with their biological parents. Neither the state nor the federal statute defines "reasonable efforts."

A.2d 707, 708 (1982). In the present case, Paul had already been returned to the physical custody of his parents, albeit on a temporary basis. Appellants cite no case, and our research has uncovered none, setting forth the standard by which the trial court shall determine, in a case such as this, whether the dependent child should remain with the natural parents or be returned to foster care. The legislative history of 42 Pa.C.S. §§ 6301 *et seq.* also fails to address this question.

Accordingly, we turn to the language of the Juvenile Act for guidance. As noted earlier, the purposes of the Act include "preserv[ing] the unity of the family *whenever possible* " and providing for the child's care "in a family environment *whenever possible,* separating the child from parents *only when necessary* for his welfare...." 42 Pa.C.S. § 6301(b)(1), (3) (emphasis added). Furthermore, the Act directs that at each disposition review hearing, the court shall determine, among other things, the *continuing necessity* for the child's placement. 42 Pa.C.S. § 6351(f). The repeated emphasis in the Act upon the desirability of preserving the family unit persuades us that "clear necessity" is the appropriate standard in the present case. Even though Paul was returned to his natural family on a temporary, trial basis, the family was nevertheless reunited, and the Act does not suggest that a standard less strict than "clear necessity" should apply if Paul's removal from the family was once again sought. As the trial court's determination, expressed in the order of September 25, 1987, that Paul should be returned to foster care was made on the basis of Paul's "best interests" rather than "clear necessity," the order is, accordingly, reversed.

■ In their second issue, appellants contend that CYS failed to show that Paul's return to foster care was clearly necessary. Therefore, they ask that, if the clear necessity standard is found to be appropriate, we not only vacate the trial court's order, but also direct that Paul be returned to them. However, it is not for this Court, but for the trial court as factfinder, to determine whether Paul's removal

from his family was clearly necessary. Accordingly, having reversed the trial court's order, we remand the case to the trial court to make the necessary determination.

■ In their third issue, appellants contend that the trial court committed reversible error when it allowed Dona Braznock, the CYS caseworker, to give opinion testimony concerning the ultimate issue in the case, i.e., who should have legal and physical custody of Paul. Ms. Braznock recommended that legal custody of Paul continue with CYS and, because she saw conditions deteriorating at appellants' home, that Paul be returned to his foster parents (N.T., 9/2/87, at 24). When cross-examined concerning her professional qualifications, Ms. Braznock testified that she had majored in criminology and had worked for six months as a resident counselor in a group home for delinquent boys before beginning employment with CYS in January of 1987 (N.T., 9/4/87, at 14). Appellants argue that the caseworker's testimony was both self-serving, given her employment by CYS, and highly prejudicial, inasmuch as it "presented to the [trial] court an appearance of authority and understanding of the issue, but it lacked substance in that it did not have a foundation in fact to support it" (Brief for Appellant at 29).

We do not agree. Our courts have held that a witness, whether lay or expert, will be permitted to testify concerning the ultimate issue to be decided by the trier of fact, provided that admission of the opinion testimony will not cause confusion or prejudice. *Kozak v. Struth*, 515 Pa. 554, 562, 531 A.2d 420, 424 (1987). Given the trial court's statement that it would take into account the fact that Ms. Braznock "doesn't have [as] much experience as some other people have" (N.T., 9/4/87, at 15), as well as the fact that Ms. Braznock's employment by CYS was known to the court, her opinion testimony cannot have been confusing or prejudicial. Accordingly, we conclude that the trial court did not err in allowing Ms. Braznock to express her opinion concerning Paul's custody and placement, and her opinion may be taken into account by the court on remand.

Order reversed and case remanded for further proceedings consistent with this opinion.  Jurisdiction relinquished.