J-S66001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: W.A.D., JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.A.D., SR. | No. 863 MDA 2014 |

Appeal from the Decree April 16, 2014
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 3935 A 2013

| | |
|---|---|
| IN RE: J.M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: W.A.D., SR. | No. 864 MDA 2014 |

Appeal from the Decree April 16, 2014
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 3935 A 2013

BEFORE: BENDER, P.J.E., SHOGAN, J. and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED NOVEMBER 25, 2014**

W.A.D., Sr., ("Father") appeals from the decrees entered on April 16, 2014, that granted the petitions filed by Centre County Children and Youth Services (CYS), and involuntarily terminated Father's parental rights to W.A.D., Jr. (born in July of 2008) and J.M.D. (born in January of 2010) (the "Children"). We affirm.

The family first became known to CYS after W.A.D., Jr., was born, due to his medical needs. After J.M.D. was born, CYS further assessed the situation, concluding that there were parenting deficiencies in that physical discipline caused bruising on the older child. Custody monitoring and parental education services were implemented. At some point in 2010,

Father and the Children's biological mother ("Mother") separated;[1] Father became homeless and was unemployed for a time. Dependency proceedings took place in February of 2011, and the Children were eventually removed from Mother's custody in August of 2011. In July of 2012, CYS filed petitions requesting a change of the permanency goal from unification to adoption. Although the court denied the petitions initially, CYS renewed the goal change petitions, and they were granted on January 30, 2013.[2]

Prior to the goal change proceedings, in October of 2011, services to aid in unification were provided to Father and the Children. The goals set for Father included: "(1) create a stable and healthy living environment for himself and his [C]hildren; (2) promote the healthy growth and development of the [C]hildren; and (3) demonstrate emotional stability and positive healthy choices." Orphans' Court Opinion (O.C.O.), 6/13/14, at 7-8. As part of the process, Father had weekly, two-hour supervised visits with the Children. Among the issues noted were Father's inability to adequately supervise the Children and his obsession with the Children's Mother, his ex-wife, who was involved in a relationship with someone else and with whom

_____

[1] Mother filed a protection from abuse petition against Father, which was granted.

[2] Father participated in the dependency hearings, but did not join in the appeal Mother filed with this Court after the permanency goals were changed to adoption. *See In the Interest of: J.M.D.*, 83 A.3d 1063 (Pa. Super. 2013) (unpublished memorandum). This Court affirmed the orders changing the goal to adoption.

she had a child. Although these two-hour visitations were held initially at Father's home,[3] the sessions were moved because Father became very aggressive with the Children. Moreover, Father had problems engaging the Children in age-appropriate activities. With regard to his sessions with counselors, Father exhibited aggressive behavior toward the staff, had little understanding that his efforts to reconcile with Mother violated the protection from abuse order, and that his inability to complete monthly income and expense statements made it impossible to assess his financial stability.

CYS filed the termination petitions on December 16, 2013, and a hearing was held on April 15, 2014. The court heard testimony from Joni Hubler, a reunification counselor employed by Family Intervention and Crisis Services, and Casie Rockey, a CYS a casework supervisor. Father testified on his own behalf and presented his sister's testimony in opposition to the termination petitions. Additionally, the court heard testimony from M.K., the Children's foster mother. In its opinion, the orphans' court concluded that:

> While it is clear to this Court [Father] loves both of the minor [C]hildren, it is also apparent [Father] lacks the capacity to parent his [C]hildren, including recognizing potential dangers and keeping them safe. [Father] was informed throughout the life of the case, as the [C]hildren initially came into care over supervision concerns, he needed to ensure he was supervising the [C]hildren adequately at all times. Although [Father] verbally acknowledged he understood the importance of

---

[3] At some point Father had obtained housing and a job.

supervising the [C]hildren, he continues to be unable to adequately provide supervision.

O.C.O. at 2. In its opinion, the court provided numerous examples of Father's inability to keep the Children safe and of Father's continuing discussions with the Children about Mother, indicating that they would all "get back together and be a family[,]" which the court found was confusing to the Children. *Id.* at 2-3. These discussions were further complicated because Father displayed numerous pictures of Mother to the Children. When counseling was suggested to help Father deal with his feeling about Mother, he "initially refused because he felt that a counselor would change his feelings for [Mother] or question his love for her." *Id.* at 6. Although Father eventually agreed to counseling, he stopped attending sessions, indicating he no longer needed the services of a counselor because the women he met online provided better counseling. *Id.*

Examples of the safety issues revolved around Father's failure to supervise the Children, "turning his back on the children multiple times to send text messages[,]" leaving the Children alone in the kitchen while a sharp knife lay on the table and while the stove was on, and failing to notice when the Children left the visitation area or left Father's apartment alone to go outside. *Id.* at 2. The court further discussed Father's aggression and his statements to the Children that "[CYS] took you away" and "they took [Christmas, Thanksgiving, and Halloween] away from us." *Id.* at 3. The court also explained Father's inability "to understand and accept the placement and role of the foster parents, continually telling the children he

- 4 -

was their 'only daddy' and they should not call anyone else 'daddy,' including their foster father." *Id.* at 4. As for Father's financial responsibilities, the court noted Father's problems when his debit card was stolen, and that he failed to follow Ms. Hubler's directions to dispute purchases on that card totaling $2,500.00. Father also had issues with some outstanding electricity bills, which he had not paid. The court also mentioned Father's poor decision-making in connection with his sending $800.00 to a woman he met online.

The court ended its discussion about the evidence presented and its conclusions regarding the decision to terminate Father's parental rights by stating:

> [Father] made no significant or lasting progress toward reaching the goals set forth by the agency. It is clear to the [c]ourt [Father] has reached the limit of his parenting abilities and is unable to make any further improvements. Although the [c]ourt does not dispute [Father] loves his [C]hildren, their lives should not be placed on hold indefinitely in the hope [Father] will someday develop the ability to parent them. Testimony was presented to this [c]ourt which indicated the [C]hildren are becoming increasingly confused as to the roles of their foster parents and [Father] in their lives. Although the [C]hildren love [Father] and look forward to his visits, his inability to control his temper and to conceal his animosity toward the agencies when visiting with the [C]hildren is detrimental to their mental well-being. Further, [Father's] inability to properly parent the [C]hildren and identify and protect them from potential dangers is detrimental to their welfare. In contrast, the stability, permanency, and resources offered by the foster parents to the [C]hildren would best serve the needs and welfare of the [C]hildren. The foster parents promote the growth and development of the [C]hildren and the [C]hildren look to them for guidance and as a significant part of their family unit.

*Id.* at 8-9.

Father filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).  He now raises the following issues for our review:

> I.  Did the trial court err by determining that there was sufficient evidence to support termination of [Father's] parental rights in W.A.D. and J.M.D.?
>
> II.  Did the trial court err by receiving hearsay evidence in the form of reports, notes of testimony, and court orders from dependency proceedings pertaining to W.A.D. and J.M.D.?
>
> III.  Did the trial court err by permitting agency witness Joni Hubler to offer opinion evidence on [Father's] capacity to parent?

Father's brief at 4.

The thrust of Father's first argument is that CYS did not allege or prove that he abused or neglected the Children.  Moreover, Father contends that CYS did not show that he lacked the capacity or the desire to meet the Children's needs.  Rather, Father claims that "[t]he record is … devoid of evidence that [Father] neglected [the Children] or that he lacked the willingness to assume the role of their father."  Father's brief at 12.  Father then identifies specific examples of the testimony provided by the witnesses presented by CYS at the hearing, contending that the evidence presented did not support a conclusion that he abused, neglected or refused to care for the Children.  *Id.* at 14.  Thus, he claims that his parental rights to the Children should not have been terminated.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa.C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511(a). *See In the Interest of B.C.*, 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511(a), it must then engage in an analysis of the best interests of the child under Section 2511(b). *See id.* Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Herein, we review the decree pursuant to section 2511(a)(2) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

- 8 -

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Father overlooks his failures to successfully complete the objectives set forth for him so that he could regain custody of the Children. CYS submitted evidence that for a period extending beyond two years, Father has not been able to remedy his inability to properly parent the Children, despite all the reunification efforts CYS employed. Although it appears that Father has tried his best to meet the reunification skills imparted to him by

the counselors, he has been unable to master them to the extent that he progressed beyond the supervised visits held in a controlled environment. In essence, Father is attacking the credibility and weight determinations made by the trial court. Unfortunately for Father, we are unable to overturn the orphans' court's decision on that basis. Moreover, our review of the record reveals that competent evidence supports the court's conclusion that Father has exhibited an incapacity to parent his Children over an extensive period of time. Accordingly, we must reject Father's first claim that CYS failed to prove the elements in connection with section 2511(a)(2).

Father's second issue concerns the acceptance into evidence in this termination proceeding of the record compiled in the dependency case. Although Father admits that this practice is standard in Centre County, he objects to this practice because he claims that these forms of evidence are all hearsay. He discusses a report authored by Marggie C. Kozak that "speaks well of [Father's] capacity to parent[,]" but notes that because Ms. Kozak never testified and because her report was based on accounts from others who observed the stated behavior, a problem of double hearsay is presented by the admission of the reports. Father's brief at 17-18. Except for this one particular report, Father does not itemize any other specific document; rather he objects generally to the introduction of "volumes of hearsay accounts[,]" which he claims "injects irremediable uncertainty into the adjudicatory process." *Id.* at 18.

The orphans' court responded to this issue in its opinion, stating:

[Father] argues the reports, transcripts, and Court Orders from the dependency proceedings concerning the [C]hildren were improperly admitted into the record. This Court disagrees.

Although the reports of staff admitted into the record do contain hearsay, Ms. Hubler and Casie Rockey were qualified to testify as to the content contained therein. They were each personally involved with the family throughout the matter, and, although they may not have observed each and every incident contained within the reports of their respective agencies, they reviewed those reports with the staff members who contributed to them. Each of the incidents was discussed at meetings with the individuals who observed them in the process of the agency['s] reaching its conclusions and making recommendations based on those reports. Further, the Court notes for each incident testified to at the hearing, the witness was actually present for and observed the incidents to which she testified. Neither Ms. Hubler or Ms. Rockey testified to incidents for which they were not present. The Court relied on their testimony when making its determination (along with the rest of the testimony presented that day), and did not rely on any statements contained within the reports admitted into the record which were not substantiated by testimony at the termination hearing as proof [Father] could not properly parent his [C]hildren.

O.C.O. at 9. We have no reason to believe that the court impermissibly relied on hearsay evidence contained in the documents relating to the dependency proceeding. Moreover, Father acknowledges that the court did not necessarily rely on these documents. Father's brief at 16.

Additionally, as noted above, Father's second argument is a general attack on the court's findings and does not identify specific hearsay statements by the witnesses that the court relied upon in arriving at its conclusions. *See In re Child M.*, 681 A.2d 793, 799 (Pa. Super. 1996)

(stating that this Court must be provided "with proper references to specific places in the certified record at which challenged testimony appears"). We are further aware that the Pennsylvania Dependency Benchbook (Administrative Office of Pennsylvania Courts, 2014) (Pa.D.B.) directs that when a court is deciding a termination petition, it should consider the history of the dependency proceedings, stating:

> It is also helpful to the court to set forth a history of the placement of the child. This should include a factual summary in addition to the grounds on which Involuntary Termination has been based. Including the date of initial referral to the agency, date of adjudication of dependency, history of placement(s), and copies of all court orders can assist in building the record for the Judge's decision.

Pa.D.B., at § 16.9.3. Lastly, we emphasize that Father had his opportunity to challenge the dependency action and the goal change to adoption. He cannot now use this termination proceeding to again litigate the issues previously decided.

Father's final issue relates to the testimony provided by Joni Hubler over Father's objection. Father contends that because Ms. Hubler was not qualified as an expert, her "lay opinion on the ultimate issue for the trial court: whether [Father] was a fit parent[,]" should have been prohibited, *i.e.*, not admitted. In response to this argument directed at the admission of Ms. Hubler's testimony, the trial court stated:

> At the hearing, Ms. Hubler was asked questions regarding the conclusions she reached regarding [Father's] parenting abilities, while Ms. Rockey was asked whether it was in the best interests of the children for [Father's] rights to be terminated.

- 12 -

The Court accepted the testimony as indicative of the opinion of the FICS and CYS agencies that [Father] was unable to parent his [C]hildren appropriately and his rights should be terminated. The Court did not accept this testimony as ultimate proof of the matters, but merely as the opinions of the agencies to be taken into consideration when making the determination of [Father's] parenting abilities and the best interests of the [C]hildren.

Further, the opinions accepted were rationally based on the witnesses' perceptions, helpful to determining [Father's] parenting ability and the best interests of the [C]hildren, and were not based on scientific, technical, or other specialized knowledge. *See* Pa.R.E. 701. Ms. Hubler testified she was present at numerous visits and meetings with [Father] where his inability to properly supervise his [C]hildren placed them at risk of potential harm. Ms. Hubler also noted [Father's] inability to control his temper and inability to refrain from discussing inappropriate topics with the [C]hildren often caused them to become upset and confused. Ms. Hubler identified many specific incidents in which [Father] demonstrated an inability to properly parent his children.

. . .

Witnesses, whether lay or expert, are permitted to testify concerning the ultimate issue to be decided by the trier of fact, provided that admission of the opinion testimony would not cause confusion or prejudice. *See In Interest of Paul S.*, 380 552 A.2d 288 (Pa. Super. 1988) (superseded by statute on other grounds as stated in *In re: D.P.*, 972 A.2d 1221(Pa. Super. 2009)). The opinions provided by Ms. Hubler and Ms. Rockey did not cause confusion or prejudice [Father]. The Court accepted them as the opinions of the agencies to be taken into consideration when making the determination of [Father's] parenting abilities and the best interests of the [C]hildren. The Court did not accept them as the sole and final determination of [Father's] parenting abilities and the best interests of the [C]hildren. Rather, these opinions were merely one of the many things this Court considered when making its determinations.

O.C.O. at 10, 11.

In addition to the court's above-quoted statement, we note that Pennsylvania Rule of Evidence 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. *See In re A.L.D.*, 797 A.2d 326, 338 (Pa. Super. 2002) (stating that "Pennsylvania law allows the admission in these proceedings of a lay witness' testimony on a party's parental capability, when that testimony is based on personal observation"); *In re Baby Boy S.*, 615 A.2d 1355, 1361 (Pa. Super. 1992) (stating that "the admission or exclusion of evidence is a matter for the trial court to determine, whose decisions in these matters will not be reversed absent an abuse of discretion, and actual prejudice"). Accordingly, the court did not abuse its discretion in relying on the testimony of Ms. Hubler, which we conclude was admissible under Pa.R.E. 701 and the case law cited above.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2014