J-S87033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO: D.B.J., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.B.J., SR., FATHER | No. 880 MDA 2016 |

Appeal from the Order February 23, 2016
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 4080

BEFORE:  LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JANUARY 06, 2017**

D.B.J., Sr., ("Father") appeals from the order, entered in the Court of Common Pleas of Centre County, terminating his parental rights to D.B.J., Jr., ("Child") (born September 2014).[1]  We affirm.

The family came to the attention of Children and Youth Services ("CYS") when Mother was pregnant with Child.  Mother had a history of drug and alcohol abuse, domestic violence, and "overall instability."  N.T.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Father has eight other children, three of whom are minors.  None of these children is in Father's custody.  A.A.M.'s ("Mother") parental rights to Child were also terminated; Mother did not appeal the termination order.  Mother has four other children, none of whom is in her custody.

Termination Hearing, 10/27/15, at 12.[2]  While pregnant with Child, Mother had been going to a local hospital twice a month to receive narcotics injections for migraines; she did not inform the caregiver that she was pregnant.

Caseworker Rebecca McKinley-Walsh testified that the day after he was born, Child had trouble feeding, had breathing difficulties and an accelerated heart rate, and suffered from tremors.   When Child was two days old, the hospital started him on morphine to help with his narcotic withdrawal.  *Id.* at 27.

At that time, McKinley-Walsh spoke with Father about his ability to care for Child, especially since Mother was regularly incapacitated from migraines.  Father was unable to commit due to his work schedule.  Further, McKinley-Walsh reported that the month before Child was born, Father and Mother had been evicted from their apartment.  In light of CYS' concerns about drug use, Father agreed to submit to a urine test, which was positive for marijuana.  *Id.* at 32.  Additionally, McKinley-Walsh was aware that Father had served ten years in prison in New York for an armed robbery; in light of his criminal record, McKinley-Walsh expressed doubt about Father's ability to rent an apartment in certain areas.

---

[2] CYS has been involved with Mother since 2005 with regard to her four other children.  N.T. Termination Hearing, 10/27/15, at 12.

The court adjudicated Child dependent on September 19, 2014; neither parent appealed. In November 2014, Father and Mother did secure an apartment, and they signed a reunification service agreement with CYS. Tamsey Ochs, a reunification counselor at Family Intervention Crisis Services, met with the family in October 2014 to explain the services provided and to get the parents underway on their reunification plan. *Id.* at 52-54. While Father was initially involved in the reunification process, he was verbally aggressive and uncooperative, he refused half of the drug tests CYS sought, and the tests he complied with were all positive for marijuana. *Id.* at 55-56, 67. Several of his tests were also positive for alcohol, another concern of CYS' because Father admitted that he "became more aggressive when he was drinking." *Id.* at 69.

Ochs also testified that for one-third of Child's scheduled visits, Father "either left for a period of time or did not get out of bed." *Id.* at 78. With regard to his drug and alcohol counseling, Father was discharged from the services due to a lack of cooperation. *Id.* at 68. Thus, with respect to reunification goals, financial stability, healthy lifestyle, stable living environment, child care, and drug and alcohol counseling, McKinley-Walsh testified that Father met none of these objectives. *Id.* at 59-69. Finally, Ochs testified that at the June 2, 2015 review conference, Father was agitated, and stated he no longer wanted services, did not want to hear from

the agency and that the agency workers were "no longer welcome" in his home.[3] *Id.* at 55. She recounted the seven-month period that Father was involved with reunification services, stating he was uncooperative and verbally aggressive with both the counselors and with Mother. *Id.* at 55-56.

Caseworker Lauren Stoud testified that in addition to providing case management services to the family, she observed Child at least once each month in the foster home. At the time of the hearing, Child was fourteen months old, was developmentally on track, was beginning to walk and talk, and was progressing in his motor skills. He no longer required early intervention services. *Id.* at 107-08. Child has been with the foster family his entire life. Stoud testified that Child has bonded with his foster parents and has a sibling relationship with the foster parents' daughter, who is one year older than Child. She also testified that the foster parents have addressed all of Child's physical and emotional needs, as well as his medical needs, and that the foster parents are a long-term option for Child. *Id.* at 107-17.

Additionally, Stoud testified that Child has been without essential parental care from Father and Mother, and that she did not see any possibility of that situation being remedied any time in the near future. *Id.*

---

[3] Mother continued to work with CYS, but she would not sign a new agreement. Reunification services ended in August 2015. N.T. Termination Hearing, 10/27/15, at 55.

at 109. She also testified that it was the agency's position that termination of Father's and Mother's parental rights would be in Child's best interest. *Id.* at 113.[4]

At the conclusion of the termination hearing, counsel for the CYS summarized its position: The conditions that gave rise to Child's placement cannot or will not be remedied by Father, Child has been in placement for over six months, and that Child's needs and welfare would be best served by termination of parental rights. *Id.* at 113. The trial court determined that CYS had established by clear and convincing evidence that termination of both Father's and Mother's parental rights was appropriate under 23 Pa.C.S.A. § 2511(a)(2)[5] and (a)(5),[6] and that termination would best serve

_____

[4] Father's counsel objected, arguing that Stoud was not qualified to opine on what is in Child's best interest. N.T. Termination Hearing, at 109-11.

[5] **§ 2511. Grounds for involuntary termination**

    **(a)**   **General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

               . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Child's needs and welfare. 23 Pa.C.S.A. § 2511(b).[7] Father appealed, and

he raises the following issues for our review:

*(Footnote Continued)* —————————

[6] **§ 2511. Grounds for involuntary termination**

> **(a)** **General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(5).

[7] Section 2511(b) provides:

> **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

1. Whether the trial court erred by receiving hearsay evidence at the termination of parental rights trial?

2. Whether the trial court erred by receiving opinion testimony from a CYS worker at the termination trial about the ultimate issues in this case?

3. Whether, due to a failure by CYS to meet its burden of proof, the court of common pleas erred in terminating the parental rights of Father to Child?

Brief for Appellant, at 4.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the

decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa. Super. 2007) (internal citations omitted). Additionally, when considering whether termination would promote a child's needs and welfare, the court considers

both tangible needs, such as food and shelter, and the intangible, such as love, comfort, security, as well as the status of the natural parental bond. The court evaluates these and all other factors involved in the child's best interests. *In re T.M.T.*, 64 A.3d 1119 (Pa. Super. 2013).

After a thorough review of the record, the briefs of the parties,[8] the applicable law, and the well-reasoned opinions[9] of the Honorable Pamela A. Ruest, we conclude that Father's issues merit no relief. CYS presented clear and convincing evidence that Child was removed from Father's care for six months, the conditions which led to removal or placement continue to exist, and that Father cannot or will not remedy those conditions within a reasonable period of time. 23 Pa.C.S.A. § 2551(a)(2). Father did not comply with the reunification plan, met none of the family service plan goals, and demonstrated an incapacity to perform parental duties. Despite seven months of reunification services, Father did not meet any of his goals or progress in his parenting ability, never getting to the point of unsupervised visits. *See In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002); Amended Opinion and Order, 2/23/16, at 6-7.

---

[8] The Guardian *ad litem* for Child has filed a brief supporting the trial court's order terminating Father's parental rights.

[9] *See* Amended Opinion and Order, 2/23/16; Pa.R.A.P. 1925(a) Opinion, 6/8/16.

For the foregoing reasons, we find that the trial court's decision is supported by competent evidence.[10]  ***Adoption of K.J., supra***.  We discern no abuse of discretion.  ***In re Adoption of S.P.***, 47 A.3d at 826-27 (Pa. 2012).  Therefore, we rely on Judge Ruest's opinions to affirm the order terminating Father's parental rights, and we direct the parties to attach those opinions in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/6/2017

---

[10] We note that the trial court did not err in allowing caseworker Stoud to opine on whether Father and Mother would be able to remedy the conditions that led to placement.  "[A] witness, whether lay or expert, will be permitted to testify concerning the ultimate issue to be decided by the trier of fact, provided that admission of the opinion testimony would not cause confusion or prejudice."  ***In Interest of Paul S.***, 552 A.2d 288, 291 (Pa. Super. 1988).  Here, the judge was sitting as trier of fact; thus, there was no danger that Stoud's lay opinion based on her observations of and interactions with the family would cause confusion or prejudice.  We also note that caseworker McKinley-Walsh's testimony with respect to CYS' history with the family and the history of dependency was not hearsay. McKinley-Walsh testified with respect to her personal observations of Child and parents the day after Child was born.  ***See In re Child M.***, 681 A.2d 793 (Pa. Super. 1996) (evidence focused on observed behavior not hearsay).

Scan included ~

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: INVOLUNTARY TERMINATION
OF PARENTAL RIGHTS TO D.B.J., Jr.,          :          Docket No. 4080
a male minor, DOB: September ?, 2014         :

## OPINION IN RESPONSE TO MATTERS COMPLAINED OF ON APPEAL

Ruest, J.

Derick Brian Jackson, Sr. ("Appellant") filed an appeal (*nunc pro tunc*) on May 27, 2016

to this Court's final Opinion and Order entered on February 23, 2016, contemporaneously with a

Concise Statement of Matters Complained of on Appeal. Permission to appeal *nunc pro tunc*

was granted on May 19, 2016. In the Opinion and Order entered on February 23, 2016, the

Court terminated Appellant's parental rights to the minor child, D.B.J., Jr. Appellant raises three

matters on appeal.

### I. Clear and Convincing Evidence

Appellant's first matter states:

Centre County Children and Youth Services failed to prove by clear and
convincing evidence that the paternal rights of Derick Brian Jackson, Sr., in the
above-named child should be terminated under 23 Pa.C.S. §§2511(a)(2) and
(a)(5). Thus, the Court of Common Pleas erred in terminating the parental rights
of Derick Jackson, Sr., in [D.B.J., Jr].

The Court believes the first matter Appellant complains of on appeal has been adequately

addressed in this Court's Opinion and Order entered on February 23, 2016.

### II. Hearsay

Appellant's second matter states: "During the parental rights termination trial, the Court

of Common Pleas erred by receiving hearsay evidence about 'domestic violence, drug use,

instability, evictions, and referrals to [CYS].'" "The well established definition of "hearsay" is

evidence which contains 'an out of court statement offered to prove the truth of the matter

asserted.'" *In re Child M*, 452 Pa. Super. 230, 681 A.2d 793, 799-800 (1996) (citation omitted).

RECEIVED
JUN 15 2016

□O  □RD  ☒S

Appendix B

Certified from the records this 9th
day of _____, 20 16

*Christine M. Millinder*
Christine M. Millinder, C.O.O.C.
Division of Common Pleas Court of
Centre County, PA

In support of this position, Appellant cites to *In re Jones*, 286 Pa. Super. 574, 429 A.2d 671 (1981). In that case, the Superior Court of Pennsylvania held "that where the reception of hearsay evidence would deprive the parent of an opportunity to confront and cross-examine a witness, such evidence may not be admitted." *Id.* at 678 (finding that the mother was deprived the due process right of confrontation in a dispositional hearing where the identity of an adverse witness was not disclosed to her). Here, however, Appellant was present in the courtroom for the testimony of all of the witnesses. While the CYS referral source was not disclosed to Father, Rebecca McKinley-Walsh, a CYS caseworker, testified subject to cross-examination as to her personal observations and conversations with the parents for each condition that led to the initial removal and placement of the child.

At the termination hearing, Father's counsel also objected to the admission of previous orders and findings of fact from the dependency hearings because those findings of fact were made under a different standard of proof and relaxed evidentiary standards. While the formal rules of evidence apply to hearings on the involuntary termination of parental rights, some evidence from the dependency proceedings is admissible. *See In re Child M.*, 681 A.2d 793. The Supreme Court of Pennsylvania has observed

> [T]he Administrative Office of Pennsylvania Court's Office of Children and Families in the Courts recently published a comprehensive benchbook for use by the bench and bar addressing issues of dependency. Administrative Office of Pennsylvania Court's Office of Children and Families in the Courts, Pennsylvania Dependency Benchbook (2010). . . . Additionally, the Benchbook urges courts and agencies to combine hearings for permanency plan goal change and termination of parental rights petitions because the evidence presented at both hearings overlaps substantially such that a single hearing is more efficient. Id. § 11.3 at 120. Moreover, a combined hearing provides for a single appeal, allowing for faster permanency for the child.

*In Re R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 n. 14 (2010). Specifically, the Benchbook provides,

> When rendering a decision with regard to a pending Petition for involuntary termination of parental rights, it is essential that the statutory requirements of each section be met. It is also helpful to the court to set forth a history of the placement of the child. This should include a factual summary in addition to the grounds on which Involuntary Termination has been based. Including the date of initial referral to the agency, date of adjudication of dependency, history of

2

Appendix B

placement(s), and copies of all court orders can assist in building the record for the judge's decision.

Pennsylvania Dependency Benchbook § 12.9.3 at 132. The Benchbook does caution to "keep in mind that hearsay evidence that may be admissible in the permanency hearing may not be admissible in the termination hearing." *Id.* § 11.6 at 123 (regarding Evidentiary Issues in Goal Change Hearings).

Here, the Court submits that it properly admitted the information from the dependency hearings, and excluded from consideration hearsay statements. *See In re Child M.*, 681 A.2d at 799. Further, testimony from caseworkers concerning their direct observations is not hearsay. *See Id.* at 800 (citation omitted).

As explained in this Court's Opinion and Order entered on February 23, 2016, the CYS and FICS caseworkers testified about their involvement in this matter, and they provided the Court with a history of placement and dependency. The Court permitted background testimony regarding A███ M████'s ("Mother") history with CYS and FICS. Such information provided context as to the initial referral to CYS and the parents' goals and progress with FICS. For example, the Court permitted limited testimony regarding Mother and O███ M████. Such information was known to CYS and FICS at the time, and provided context as to the services and goals established for Appellant and Mother. As to domestic violence, the information was relevant and was provided to the Court through the non-hearsay of Tansey Ochs, a reunification counselor with FICS:

> [Ms. M████] shared a little bit about her past with us, about being in domestically violent relationships before. We processed with her and Mr. J██████ the level of his verbal aggression, while he never became physical, to our knowledge, could still have a negative impact on her because of the nature of her history.

Tr. 65:14-20.

As to drug use, Ms. McKinley-Walsh testified that the child was placed on a regimen of morphine for withdrawal symptoms after birth, and supplemented that information with her personal observations. ("Baby J██████ had tremors. He cried a lot. He had trouble feeding. He

3

Appendix B

had, like, breathing difficulties." Tr. 26:11-15.). She also testified that Mr. J███████ took a drug test at the hospital and "[she] asked him prior to the results if there was going to be anything positive on it, in which he informed [her there] would be marijuana." Tr. 32:20-23.

As to instability and evictions, Ms. McKinley-Walsh testified about the parents' lack of cooperation throughout the process. She also testified about conversations she had with Mother and Appellant. ("It was understood that they were evicted at the end of July, beginning of August, from their apartment that they had a lease to. And their whereabouts during the month of August were unknown." Tr. 27:1-5.).

The witness's personal observations and conversations with the parents are not hearsay, and the Court respectfully submits that hearsay statements were properly excluded from consideration in this matter.

III.    Testimony of Lauren Stoud (CYS Caseworker)

Appellant's third matter complained of on appeal states: "During the parental rights termination trial, the Court of Common Pleas erred by receiving opinion testimony by lay witness Lauren Stoud about whether the child's parents would be able to remedy the circumstances originally requiring placement." Ms. Stoud's testimony was:

> Q: Is it the agency's position that the conditions which originally gave rise to the placement cannot or were not remedied by Mr. J██████ or Ms. M█████ in a reasonable period of time?
>
> A: That is correct.

Tr. 113:11-15.

Preliminarily, while such testimony was received by the Court during the hearing, the Court did not specifically rely upon that portion of Ms. Stoud's testimony in terminating Appellant's parental rights to the child. Further, "a witness, whether lay or expert, will be permitted to testify concerning the ultimate issue to be decided by the trier of fact, provided that admission of the opinion testimony would not cause confusion or prejudice." *In Interest of Paul S.*, 380 Pa. Super. 476, 552 A.2d 288, 291 (1988) (superseded by statute on other grounds as

4

Appendix B

stated in *In re: D.P.*, 2009 PA Super. 86, 972 A.2d 1221); *See Pa.R.E. 701.*

> Pennsylvania law allows the admission in these proceedings of a lay witness' testimony on a party's parental capability, when that testimony is based on personal observation. Evidence of the parent's family history of mental illness and involvement with the welfare system is also relevant and admissible regarding issues of family stability or lack of a social support system to assist the parent with the child.

*In re A.L.D.*, 2002 Pa. Super. 104, 797 A.2d 326, 338 (citations omitted).

Here, Ms. Stoud is a CYS caseworker familiar with this case, and Ms. Stoud's testimony was subject to cross examination.

> Q: In forming your position as an agency, you rely heavily on information from outside agencies, in this case specifically FICS, to inform that decision; correct?
>
> A: That is correct.
>
> Q: And so, it would be their - - primarily their observations and their descriptions of those interactions with the parents that would be forming the basis of your opinion for the court today?
>
> A: It is also based on the agency's interactions with the parents and the history with the agency as well.
>
> Q: And those interactions with these parents in the present context are, your testimony was somewhat limited, that your involvement is primarily with the - - to create, generate a referral and then case management after that; is that correct?
>
> A: That is correct.

Tr. 115:21-116:13. Such testimony did not confuse or prejudice the Court. The Court was made aware of Ms. Stoud's role in this matter, and the coordinated efforts of CYS and FICS. The Court was able to consider and evaluate Ms. Stoud's testimony along with the testimony of Ms. McKinley-Walsh, Ms. Ochs, and Ms. Rockey. Therefore, the Court did not err by receiving opinion testimony by lay witness Lauren Stoud about whether the child's parents would be able to remedy the circumstances originally requiring placement.

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: INVOLUNTARY TERMINATION : 
OF PARENTAL RIGHTS TO D███████ B████ : Docket No. 4080█
J████████, JR., a male minor, DOB: : 
September █, 2014 : 

2016 FEB 23 PM 3 16
CLERK OF ORPHANS COURT
REGISTER TO WILLS &
CHRISTINE H. MILLINDER
FILED FOR RECORD
CENTRE COUNTY, PA

## AMENDED OPINION and ORDER

Ruest, J.

Presently before the Court is a Petition for Involuntary Termination of Parental Rights as to D████ B████ J████████, Sr., Biological Father, and A████ A██ M██████, Biological Mother, filed by Centre County Children and Youth Services ("CYS") on August 26, 2015. A hearing was held on October 27, 2015. The Guardian Ad Litem filed a Memorandum of Law on December 21, 2015, CYS filed Findings of Fact and Conclusions of Law and Proposed Order on December 30, 2015, Mother filed a Brief in Response to Petition to Involuntary Terminate Parental Rights on February 2, 2016, and Father filed Proposed Findings of Fact and Conclusions of Law on February 2, 2016. After consideration of the record and the arguments of counsel, the Court finds as follows:

## Background

D████ B████ J████████, Jr. was born on September █, 2014, and was placed in the physical care and custody of CYS by Emergency Protective Order on September 8, 2014. He was adjudicated dependent on September 19, 2014, and has remained dependent since that time. A kinship placement was considered but the prospective foster parent failed to complete the necessary paperwork.

Mother's involvement with CYS began in 2005. She has a history of drug and alcohol abuse, domestic violence, homelessness, and instability. D████ Jr. is Mother's fifth child. Mother's rights to two of her other children were voluntarily terminated, and her parents had custody of all four of the children

☐O ☐RD ☒S

Father testified that he has eight other children ranging in age from 6 to 25, and none of these children were ever taken into protective custody. Father, however, does not have custody of any of his other children, and he refused to sign releases to enable reunification services to contact the other mothers about his parenting skills and involvement with the children.

The CYS intake coordinator, Rebecca McKinley Walsh, testified that CYS attempted to contact and meet with the parents prior to the child's birth, but the parents did not cooperate. The parents did not have proper housing when the child was born, and had been homeless during the month prior to the child's birth.

CYS was concerned with the drug use of both parents. The child suffered from tremors, a high rate heartbeat, and was not breathing and feeding properly at birth. These symptoms are consistent with withdrawal and the child was placed on a Morphine regimen.

Mother admitted to receiving narcotic injections for her migraine headaches throughout her pregnancy, as she did not disclose her pregnancy during her emergency room visits for the injections. CYS was also concerned about how Mother could care for the child after receiving the narcotic shots. Mother continued to manage her migraine pain through narcotic injections at the emergency room and did not properly follow-up with a neurologist.

CYS was concerned with Father's deceptive behaviors and his reluctance to cooperate with CYS. Father became angry and verbally aggressive when informed that the child would not be discharged to the parents, and hospital security was called because of Father's aggressive behavior. Father was not cooperative in submitting to a drug test, and thereafter admitted to smoking marijuana, and tested positive for marijuana. Father was also not forthcoming about his criminal record, and would not sign releases so that CYS could investigate his parenting background.

Reunification services were provided by Family Intervention Crisis Services ("FICS") beginning on October 7, 2014. Tansey Ochs, a FICS reunification worker, testified that three goals were set for Mother and Father: (1) the parents would meet their physical needs, (2)

2

Mother and Father would maintain a healthy lifestyle for themselves and the child, and (3) Mother and Father would promote healthy growth and development of the child. As to the first goal, the parents were able to obtain housing but in June of 2015 Father stated reunification services were unwelcome. Father is employed, but refused to provide necessary financial paperwork so FICS was unable to properly evaluate the couple's financial circumstances.

As to the second goal, the parents continued to use drugs and alcohol. Mother refused drug testing 57% of·the time, and tested positive for drugs or alcohol on the tests she took. Father refused drug testing 50% of the time, and of the tests he took, all were positive for marijuana and some were positive for alcohol. Both parents were ultimately discharged from counseling for lack of attendance. The parents also did not always cooperate with lifestyle checks at their home.

As to the last goal, the parents did not accept responsibility for the fact that their son was born addicted. The parents never progressed beyond supervised visits. During visits, Mother was able to provide for the child's basic needs. As explained above, however, there were concerns about parenting the child during her migraines and after narcotic shots. Father struggled, and was unable to properly make a bottle, and was not engaged or slept during visits. During sessions with FICS, Father was aggressive and would not cooperate. Neither parent would provide the names of people they associated with to ascertain if they posed a threat to the child or could be a resource when Mother suffered from migraines and Father was at work. On June 2, 2015, Father stated he would not cooperate with FICS and they were no longer permitted at his residence.

## Discussion

CYS filed a Petition for Involuntary Termination of Parental Rights of Mother and Father based on two grounds:

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental control or subsistence necessary for his physical or mental well-being and the conditions

3

and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent; and

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

*23 Pa.C.S.A. § 2511(a)*. "[T]he burden of proof is upon the party seeking termination to establish by 'clear and convincing' evidence the existence of grounds for doing so." *Matter of Adoption of G.T.M.*, 506 Pa. 44, 483 A.2d 1355, 1356 (1984). The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 2004 PA Super. 251, 855 A.2d 68; 73-4 (citation omitted).

I.    23 Pa.C.S.A. § 2511(a)(2)

Under this section, grounds for termination may include affirmative misconduct, acts of refusal, as well as incapacity to perform parental duties. *In Re A.L.D.*, 2002 PA Super.104, 797 A.2d 326, 337. Father has demonstrated a repeated and continued incapacity, abuse, neglect or refusal that has caused the child to be without essential parental control or subsistence necessary for his physical or mental well-being. The parents were provided reunification services for seven months in order to reunite the child with the parents. The parents' effort was minimal and inconsistent. Despite reunification efforts, Father refused to cooperate in drug and alcohol counseling, provide necessary personal and financial information, or actively participate in visits with the child. Instead, Father continued to test positive for marijuana and alcohol, was released from counseling for lack of attendance, and slept through some visits with the child. Father demonstrated aggression and anger towards service providers, causing some parenting sessions to end early, and otherwise did not listen to their guidance and advice. Father refused to allow the reunification team to contact the mothers of his other eight children.

4

Further, the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. Despite seven months of reunification services, the parents did not progress in their goals or parenting ability, and never advanced to unsupervised visits with the child. Father continued to show anger and aggression, and to test positive for drugs. Most telling, at the June 2, 2015, status conference, Father stated he would no longer cooperate with reunification services, and FICS was no longer permitted in the home for lifestyle checks, drug screens, or assessments. Father was unwilling and ultimately refused to remedy the conditions and causes of the child's placement.

Mother has also demonstrated a repeated and continued incapacity, abuse, neglect or refusal that has caused the child to be without essential parental control or subsistence necessary for his physical or mental well-being. Mother marginally cooperated with reunification services. Mother continued to test positive for marijuana, alcohol, and cocaine, and was released from drug and alcohol counseling for lack of attendance. Mother continued to handle her migraine pain through narcotic injections at the emergency room and did not properly follow-up with a neurologist to seek other methods of handling her migraine headaches. Mother did not create a plan for alternative childcare for periods of migraine headaches and narcotic injections.

Further, the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. Despite seven months of reunification services, the parents did not progress in their goals or parenting ability, and never advanced to unsupervised visits with the child. Mother did not remedy any of her behaviors. Father jeopardized any efforts for Mother to be successful at reunification when he ended reunification services, and FICS' ability to perform lifestyle checks, drug screens, or assessments. Mother argues she is capable of meeting the child's developmental, physical, and emotional needs, and continue reunification services without Father. Mother, however, missed the meeting to sign a new Service Agreement with FICS. See *Commonwealth v. Arnold*, 445 Pa. Super. 384, 665 A.2d 836, 840

5

(citations omitted) ("A parent cannot protect parental rights by merely stating that she does not wish to have her parental rights terminated. Rather, a parent has an affirmative obligation to act in the child's best interest."). Previous to Father ending services, Mother did not progress independently or complete drug and alcohol counseling. For these reasons, Mother was unwilling and ultimately unable to remedy the conditions and causes of the child's placement.

As such, grounds were established under subsection (2) to terminate Father and Mother's parental rights.

II.    23 Pa.C.S.A. § 2511(a)(5)

CYS also petitioned the Court to terminate parental rights under section 2511(a)(5). Here, D██████ Jr. (D.O.B. September █, 2014) was removed from Mother and Father at the hospital, and has been in the custody of the agency and the foster parents his entire life. As such, the placement has been for a period over six months.

The conditions which led to the removal or placement of the child continue to exist. As explained above, both parents continue to test positive for drugs and alcohol, and failed to complete counseling. Mother continues to manage her migraines solely through emergency room narcotic shots. Father was uncooperative and stonewalled every opportunity by failing to sign releases and provide necessary documentation.

The parents cannot or will not remedy those conditions within a reasonable period of time. The parents failed to take advantage of the services provided to them. Despite seven months of reunification services, the parents did not progress in their goals or parenting ability, and they never advanced to unsupervised visits with the child. The parents failed to provide reunification services with necessary information to evaluate their housing and financial stability, and their childcare options.

The services or assistance reasonably available to the parents are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time. As stated above, the parents failed to progress with the assistance of reunification

6

services, and then, in June of 2015, Father angrily stated he would no longer cooperate with reunification services, and FICS was no longer permitted in the home for lifestyle checks, drug screens, or assessments. *See In re A.R.*, 2003 PA Super. 456, 837 A.2d 560, 564 (citation omitted) ("[I]f a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, [CYS] has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted.") As the parents were living together, such refusal effectively ended services for both parents.

Lastly, termination of the parental rights would best serve the needs and welfare of the child. The child has been in foster care his entire life, and has bonded with his foster parents and foster sister. The foster family provides for his needs. The child is developing on track and Early Intervention Services are no longer needed. Terminating Father and Mother's parental rights would best serve the child's needs and welfare.

III.    23 Pa.C.S.A. § 2511(b)

When the Court determines the parent's conduct warrants termination under section 2511(a), the Court must then make a determination of the needs and welfare of the child pursuant to section 2511(b).

> The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

*23 Pa.C.S.A. § 2511(b)*. "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re L.M.*, 2007 PA Super. 120, 923 A.2d 505, 511 (citations omitted). Other considerations include "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the

7

child." *In re N.A.M.*, 2011 PA Super. 242, 33 A.3d 95, 103 (*citing In Re C.M.S.*, 2005 PA Super. 340, 884 A.2d 1284, 1287).

Here, both CYS and the guardian *ad litem* believe that terminating the rights of the parents to D█████, Jr. best address the child's developmental, physical, and emotional needs and his welfare. The child has been in foster care with the same family for his entire life. Mother and Father never progressed beyond supervised visits with the child. His developmental, physical, and emotional needs have been provided by the foster family since his birth. Lauren Stoud, a CYS caseworker, testified that the child bonded to the foster family and they provide for his needs. The child has formed a sibling relationship and bond with the foster family's other child. D█████ Jr. was born drug dependent, but with the assistance of Early Intervention Services, the child is progressing and developing on track.

Termination in this case is not based on environmental conditions beyond the control of Father and Mother. Both parents were provided services and the opportunity to demonstrate their desire to parent this child, yet both parents failed to comply with the service goals. Ms. Ochs testified that the safety of the child could not be ensured with the biological family. For these reasons, it is in the child's best interest to remain with the foster family, and terminate the parental rights of the biological parents.

IV.   Hearsay

Father argues that some of the evidence presented at the involuntary termination hearing was hearsay. Specifically, Father objects to evidence about "domestic violence, drug use, instability, evictions, and referrals to [CYS]" and that the child was "placed on a regimen of morphine . . . due to withdrawal symptoms" as well as other hearsay reports regarding the circumstances of the foster home. Here, CYS caseworkers Rebecca McKinley Walsh, Lauren Stoud, and Casey Rockey, and FICS caseworker Tansey Ochs, testified about their direct involvement and observations in this matter, and they provided the Court with the parents' history of placement and dependency. Accordingly, the following Order is entered:

8

## ORDER

AND NOW, this 22nd day of February, 2016, the Petition for Involuntary Termination of Parental Rights of D██████ B████ J███████, Sr., Biological Father, and A███████ A███ M██████, Biological Mother, is GRANTED. CYS is awarded sole custody of D██████ B████ J███████, Jr. Notice and consent from the biological parents are not needed for an adoption.

BY THE COURT:

Pamela A. Ruest, Judge

9